168 So.2d 881 (1964)
Eleanor Cargill HARRIS et al., Plaintiffs-Appellees,
v.
J. C. TRAHAN, DRILLING CONTRACTOR, INC., et al., Defendants-Appellants.
No. 10234.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1964.
Simon, Carroll, Fitzgerald & Fraser, Shreveport, for J. C. Trahan, Drilling Contractor, Inc., J. W. Vandeveer, Vanson Production Corporation, M. F. McCain, A. M. Jackson, W. P. Prentiss, defendants-appellants.
*882 Theus, Grisham, Davis, Leigh & Brown, Monroe, for Eleanor Cargill Harris, Elaine Cargill Armstrong, Mayme Cargill Heard, and John Lee Cargill, plaintiffs-appellees.
Before HARDY, GLADNEY, and AYRES, JJ.
AYRES, Judge.
This is an action by plaintiffs who, as lessors, pray for the cancellation of an oil, gas, and mineral lease on a described 120-acre tract of land in Lincoln Parish upon the basis of the nonpayment of royalties. Plaintiffs further seek an accounting of royalties allegedly accruing to their interests as a result of production from a well drilled upon property with which their land was unitized. The defendants denied any breach of the original lease on their part and, in reconvention, prayed for the recognition of a release of the lease tendered in response to plaintiffs' demands. Defendants further pleaded that plaintiffs were estopped to deny their right to tender the release because plaintiffs formerly contended the lease had expired by its terms, and threatened litigation unless such a release was furnished, or unless an additional bonus was paid for a ratification of the lease.
There was judgment below ordering the oil, gas, and mineral lease canceled as of July 2, 1963, and directing the defendants to account for shut-in and production royalties from the date of the completion of the well on December 3, 1961, to the aforesaid cancellation date, recognizing plaintiffs as the owners of the entire interest in the lease subject to a deduction of their proportionate share of operating costs incurred thereafter, and assessing defendants with costs incurred in connection with drilling and equipping the well prior thereto. Defendants appealed. Plaintiffs answered the appeal seeking damages and attorneys' fees.
No substantial dispute exists as to the pertinent facts. The case was tried primarily on the basis of a stipulation of those facts. A résumé suffices for an understanding of the issues as they are resolved.
Plaintiffs, as the owners in equal proportions, and as part of their separate estates, of the S ½ of the SE ¼ and S.E. ¼ of SW ¼, Sec. 31, T. 19 N., R. 3 W., executed an oil and gas lease November 21, 1960, to and in favor of J. W. Vandeveer, with a primary term of nine months, which, however, was to continue in effect as long thereafter as oil, gas, or other minerals was produced from said land or land with which it was pooled. By instruments of record, the defendants became the owners of this lease. The Commissioner of Conservation, under date of March 22, 1961, unitized Sec. 31 of the aforesaid township and range as a separate drilling and production unit for each of the Price, Davis, and "D" Sands of the Cotton Valley Formation. Pursuant to such unitization, a well was commenced August 3, 1961, in the SW ¼ of the NE ¼ of the unit and drilled through the aforesaid sands, none of which were found to be productive of minerals in paying quantities. However, gas and associated liquid hydrocarbons were encountered in the "C" Sand of the Cotton Valley Formation. Thereafter, on or about November 14, 1961, defendants made application to the Department of Conservation for the creation and designation of the aforesaid section, township, and range as a drilling and production unit for that sand. Pursuant to this application, the unit was established by the Commissioner's order of January 24, 1962. In the interim, the well, known as Pankey Unit Well No. 1, was plugged back and completed on or about December 3, 1961, as a producer from the "C" Sand of the Cotton Valley Formation. All of the aforesaid operations, from commencement to completion date, were conducted without cessation at any time of so much as 30 days.
Following the completion of the aforesaid well, plaintiffs contended that the lease executed by them had expired and terminated by its own terms. In support of this contention, plaintiffs pointed out the lease *883 provided that, if the lessees should drill a dry hole on the subject property, or on property with which it was pooled and unitized, the lease would remain in force and effect for an additional 60 days thereafter, during which delay operations for additional drilling or reworking might be undertaken. Thus, it was contended, no operations were conducted upon plaintiffs' property, nor upon any property with which it was unitized, as to the "C" Sand of the Cotton Valley Formation, until the lapse of more than 60 days from the failure of lessees to obtain a producer in the unitized formation. This contention appears to possess no merit in view of the stipulation that not more than 30 days intervened during the course of the operations. Defendants therefore contended that the lease had not expired or terminated and rejected plaintiffs' demands for a release.
Shut-in royalties in the form of bank money orders were remitted by defendants to plaintiffs covering a period extending to July 15, 1962. These payments were refused and returned to defendants. There followed an extended exchange of communications and correspondence between plaintiffs and defendants, individually and through their counsel, relating to their respective contentions as to the continued validity and existence, vel non, of the lease. May 31, 1963, the defendants executed a release of the lease, effective as of December 3, 1961. This release was forwarded to plaintiffs' counsel with a letter explaining that, notwithstanding the execution of the release, plaintiffs would be held for their pro rata share of the cost of drilling the Pankey well, as well as the production costs. This release was treated by plaintiffs as conditional and therefore unacceptable. Plaintiffs deposited checks theretofore remitted in payment of production royalties, the payment of which had, in the meantime, been stopped by the defendants in view of plaintiffs' contention that the lease had terminated.
Obviously, both parties, plaintiffs and defendants, have completely changed their original positions with respect to the expiration, vel non, of the oil, gas, and mineral lease herein involved. The complexities involved in this change of position do not appear to be relevant. There was no agreement upon the release as to its retroactive aspect or conditional terms whereby defendants sought to impose upon plaintiffs costs for drilling and operating the well. No duty was imposed upon plaintiffs to accept such a release. The release was, in our opinion, without any force or effect.
Nor do we find any merit in defendants' plea of estoppel. Defendants' peaceful possession and occupancy of the property under their lease was not disturbed; nor was the exercise of their rights under the lease affected by any action of plaintiffs. Defendants have, in fact, been in possession of the property leased and have actually enjoyed all the rights conferred upon them by the lease.
Reduced to its simplest terms, this action involves an attempt to cancel an oil, gas, and mineral lease on the basis of the nonpayment of royalties. Plaintiffs' principal cause of action relates, therefore, to defendants' alleged breach of the terms of the lease by their failure to pay such royalties. The general rule is now well established in the jurisprudence that failure to pay production royalties under an oil and gas lease, for any appreciable length of time, without justification, amounts to an active breach of such lease which entitles the lessor to a cancellation thereof without the necessity of placing the lessee in formal default. Melancon v. Texas Company, 230 La. 593, 89 So.2d 135 (1956); Bollinger v. Texas Company, 232 La. 637, 95 So.2d 132 (1957); Bailey v. Meadows, 130 So.2d 501, 508, La.App., 2d Cir. 1961 (writs denied); Pierce v. Atlantic Refining Company, 140 So.2d 19, La.App., 3d Cir. 1962 (writs denied).
*884 In commenting upon these authorities, the Court of Appeal, Third Circuit, in Fawvor v. United States Oil of Louisiana, Inc., 162 So.2d 602, 607-608, made this appropriate observation:
"In the Bailey case there was a failure to pay production royalties for approximately eighteen months. Other cases cited by plaintiff include Melancon v. Texas Co., 230 La. 593, 89 So.2d 135 (failure to pay royalties for 15 months without justification); Bollinger v. Texas Co., 232 La., 637, 95 So.2d 132 (failure to pay production royalties for over one year held to be grounds for cancellation); Pierce v. Atlantic Refining Co., La.App. (3rd Cir.), 140 So.2d 19 (failure to pay production royalties for seven months was unreasonable under the circumstances). But implicit in all of the above decisions is that in determining whether payment of production royalties has been unjustifiably withheld the courts must examine the facts and circumstances of each case."
Consideration must therefore be given to the facts and circumstances surrounding the nonpayment of royalties in the instant case.
Plaintiffs' original position was that production from the "C" Sand did not continue the lease in effect. Accordingly, the royalties unconditionally tendered in the form of checks were unacceptable to plaintiffs upon the basis that defendants had no lease on the property. Payment of these checks, which remained in plaintiffs' possession, was eventually stopped because defendants acceded to plaintiffs' demands and executed a release and thereafter contended they owed plaintiffs nothing.
These facts, in our opinion, established that this is not a case of failure to pay royalties for an appreciable length of time without justification. The royalties were tendered; they were not accepted. Thus, defendants attempted to fulfill their obligations with respect to the payment of royalties. Plaintiffs must, therefore, bear the responsibility for their refusal to accept the payments when offered. We conclude, therefore, that the lease herein involved is in full force and effect.
The plaintiffs are, however, entitled to an accounting of royalties which have accrued or may accrue to them under the terms of the lease.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed that plaintiffs' demands be, and they are hereby, rejected, and that, accordingly, that certain oil, gas, and mineral lease covering the following-described property, to wit:
S ½ of SE ¼ and SE ¼ of SW ¼, Sec. 31, T. 19 N., R. 3 W., Louisiana meridian, Lincoln Parish, Louisiana,
executed by and between Eleanor Cargill Harris, Elaine Cargill Armstrong, Mayme Cargill Heard, and John Lee Cargill, as lessors, and J. W. Vandeveer, as lessee, dated November 21, 1960, bearing Registry No. C-26365, and recorded in Book 79, page 201, of the Conveyance Records of Lincoln Parish, be, and the same is hereby, recognized and decreed to be in full force and effect.
It is further Ordered, Adjudged, and Decreed that defendants account to plaintiffs for all royalties to which plaintiffs are entitled and which have accrued or may accrue to them under the terms of the aforesaid lease.
It is further Ordered, Adjudged, and Decreed that the costs incurred in both the trial and appellate courts be equally divided between plaintiffs and defendants.
Reversed and rendered.