Frederick J. **FREY**, et al.

v.

**AMOCO PRODUCTION COMPANY.**

Civ. A. No. 88–1622.

United States District Court,
E.D. Louisiana.

July 6, 1990.

See also, 708 F.Supp. 783.

William S. Strain, Frederick W. Ellis, David M. Ellison, Jr., Baton Rouge, La., for plaintiffs.

Frank J. Peragine, Clyde Mote, New Orleans, La., for defendant.

ROBERT F. COLLINS, District Judge.

Plaintiffs, Frederick J. Frey, et al., move the Court for final judgment against defendant, Amoco Production Company (Amoco). Plaintiffs seek a judgment finding that Amoco: (1) is subject to the Louisiana Public Records Law, La.R.S. 44:1 *et seq;* and (2) had a duty to provide Frey with a full accounting prior to this lawsuit. For the reasons given below, the *Motion* is DENIED.

## I. PROCEDURAL HISTORY

The trial proceedings in this case were concluded on April 16, 1990 with the parties entering into the following stipulations:

(a) The parties reached a compromise settlement of plaintiffs' claim for alleged incorrect calculation of royalties covering the period April 18, 1985 through November 30, 1988. The incorrect calculation claim was the only monetary claim remaining in the case after the Court granted defendant's motion for involuntary dismissal following the close of plaintiffs' case in chief on March 6, 1990; and

(b) Plaintiffs' contention, that Amoco is subject to the Louisiana Public Records Act by virtue of its having been designated operator of the five gas units involved in this suit, was submitted to the Court for decision based on the briefs and documentary evidence introduced at trial; and

(c) Each side would bear its own costs.

Accordingly, the only remaining issues are whether Amoco is subject to the Louisiana Public Records Act and whether Amoco owed Frey a full accounting prior to this lawsuit.

## II. PUBLIC RECORDS ACT

■ The purpose of the Public Records Act is to foster "the inherent right of the public to be reasonably informed as to the manner, basis, and reasons upon which *government affairs* are conducted," *Trahan v. Larivee,* 365 So.2d 294, 298 (La.App. 3rd Cir.1978), *writ denied,* 366 So.2d 564 (La.1979) (emphasis added). Plaintiffs argue that all of Amoco's business records should be subject to the public records stat-

ute for two reasons: (1) because Amoco is licensed by the state as a unit operator; and (2) because Amoco collects severance taxes on the minerals which are produced from the various units in which plaintiffs own an interest.

■ With respect to the first contention, plaintiffs' argument is that Amoco, as unit operator, is a "quasi-public official or agency" performing a governmental function of conservation. Amoco is a company that owns a working interest in units in the Morganza Field. It does so in a private capacity like other working interest owners. Its rights and obligations, vis-a-vis the other working interest owners, are governed by private contract, usually a joint operating agreement. In this case, there is no joint operating agreement. In the absence of a joint operating agreement, case law, rather than state statute, controls the working interest relationship. No rational distinction can be drawn between Amoco, as unit operator, and the other working interest owners for purposes of applying the Public Records Act.

■ Next, plaintiffs argue that because Amoco, pursuant to statute, collects severance taxes on the minerals which it produces, *all of Amoco's records* are subject to open disclosure under the Public Records Act's provision concerning receipt or payment of money by or under the authority of the constitution or the laws of the state. If this were the established interpretation of the Public Records statute, then all the business records of every retailer who collects state sales tax would also be public records. The Court finds that the fact that Amoco was named unit operator does not change its status.

The only reported Louisiana case in which a private corporation has been held to be subject to the Louisiana Public Records Act is *Lewis v. Spurney,* 456 So.2d 206 (La.App. 4th Cir.) *writ denied,* 457 So.2d 1183 and 458 So.2d 488. In that case, a non-profit corporation, the Louisiana World Exposition, Inc., had received $25 million under two state appropriations. The Court held that records of receipts and disbursement of those funds were deemed

to be public records because they concerned the receipt or payment of money by or under the authority of the State constitution or laws, noting that "[t]he public is entitled to see exactly where all this money has been spent." *Id.* at 208.

■ A reading of the definitions sections of La.R.S. 44:1 reveals that the legislature never intended for this statute to be used as a discovery tool by private litigants against a private corporation:

A. (1) As used in this Chapter, the phrase "public body" means any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, or any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function.

\* \* \* \* \* \*

A. (3) As used in this Chapter, the word "custodian" means the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records.

\* \* \* \* \* \*

It is important to note that in *Lewis v. Spurney, supra,* only *some* records were deemed to be public records within the meaning of La.R.S. 44:1 *et seq.,* and then only because the records belonged to a non-profit corporation receiving large grants from the State. This fact situation is not specifically addressed by statute. The State licensed production activities and tax collection functions of private corporations, such as Amoco, are absent from the definitions of La.R.S. 44:1(A)(1).

■ It is important to note the type of information that plaintiffs seek. Plaintiffs do not seek severance tax records from Amoco, nor do they seek data on production volumes. Plaintiffs could (and did in the case of production volumes) obtain such

information from the State. Instead, plaintiffs seek unimpeded access to all of Amoco's financial records, records of Amoco's exploration and acquisition activities, and trade secrets. The information plaintiffs seek has no relationship to Amoco's status as a unit operator or to its collection of severance taxes, nor to the "manner, basis and reasons upon which governmental affairs are conducted." *Trahan,* 365 So.2d at 298.

In sum, the Court finds that there is no evidentiary basis or authority in law for holding that Amoco's business records are public records within the meaning of La. R.S. 44:1 *et seq.* Accordingly, plaintiffs' motion is DENIED.

### III. AMOCO'S DUTY TO PROVIDE AN ACCOUNTING

■ Since the Pretrial Order failed to list Amoco's alleged duty to account as a contested issue of law, the issue is not properly before the Court. The Court notes that plaintiffs' proposed conclusions of law also do not include the contention that they are entitled to a full accounting prior to filing suit.

Although not properly before the Court, plaintiffs' contention will be addressed. Prior to plaintiffs' filing suit, Amoco furnished them with all the information required by statute, as well as with additional data they requested. Amoco provides this data to its royalty owners in accordance with La.R.S. 31:212.31, which sets forth the information which a mineral lessee must furnish to its royalty owners. La.R.S. 31:212.31 provides:

**§ 212.31. Payment information to interest owners**

A. As used in this Article:

(1) "Check stub" means the financial record attached to a check.

(2) "Division order" means a contract of sale to the purchaser of oil or gas directing the purchaser to make payment for the value of the products taken in the proportions set out in the division order, which division order is prepared by the purchaser on the basis of the ownership shown in the title opinion prepared after

examination of the abstracts and which is executed by the operator, the royalty owners, and the other persons having an interest in the production.

(3) "Interest owner" means a person owning a royalty interest or a working interest in an oil or gas well or unit.

B. Whenever payment is made for oil or gas production to an interest owner, whether pursuant to a division order, lease, servitude, or other agreement, all of the following information shall be included on the check stub or on an attachment to the form of payment, unless the information is otherwise provided on a regular basis:

(1) Lease identification number, if any, or reference to appropriate agreement with identification of the well or unit from which production is attributed.

(2) Month and year of sales or purchases included in the payment.

(3) Total barrels of crude oil or MCF of gas purchased.

(4) Owner's final realizable price per barrel or MCF.

(5) Total amount of severance and other production taxes, with the exception of windfall profit tax.

(6) Net value of total sales from the property after taxes are deducted.

(7) Interest owner's interest, expressed as a decimal fraction, in production from (1) above.

(8) Interest owner's share of the total value of sales prior to any tax deductions.

(9) Interest owner's share of the sales value less his share of the production and severance taxes, as applicable.

Added by Acts 1983, No. 660, § 1, eff. Jan. 1, 1984.

Amoco's royalty check stubs comply with the statute in all respects. The check stub which accompanies Amoco's monthly royalty checks discloses the unit to which the production is attributable, the production month and year, the type of transaction, the volume, price, and total value upon which royalty was calculated, applicable taxes which were deducted, and the royalty decimal interest. The Court has not discovered any case law which supports plaintiffs' contention that a royalty owner has a right to an accounting prior to filing suit.

In *Williams v. Humble Oil & Refining Company*, 432 F.2d 165 (5th Cir.1970), the Fifth Circuit stated that:

"[i]t would be a mistake to think that a Louisiana landowner may never compel an accounting by his mineral lessee. Indeed, we have been able to find several oil and gas cases in which Louisiana courts have ordered an accounting. *E.g., Fontenot v. Sunray Mid–Continent Oil Co.* (La.App. 3d Cir.1967) 197 So.2d 715; *Mire v. Hawkins* (La.App. 3d Cir.1965) 177 So.2d 795; *Davies v. Texarkana Crude Oil Co.*, 1923, 154 La. 424, 97 So. 597; *Harris v. J.C. Trahan Drilling Contractor, Inc.*, La.App. 2d Cir.1964, 168 So.2d 881; *Pierce v. Atlantic Ref. Co.*, La.App. 3d Cir.1962, 140 So.2d 19; *Bailey v. Meadows*, La.App. 2d Cir.1961, 130 So.2d 501. Each case, however, follows a well-defined pattern, typically an action by the lessor to cancel his mineral lease on the ground of nonpayment of royalties. If the court orders cancellation of the lease, it may also direct the lessee to account to the plaintiff for the royalties earned until cancellation. *See Davies v. Texarkana Crude Oil Co.; Fontenot v. Sunray Mid–Continent Oil Co.; Pierce v. Atlantic Ref. Co.; Bailey v. Meadows.* Even if the court rejects the lessor's demand for cancellation because nonpayment was excusable, plaintiff is still entitled to an accounting of royalties that have accrued under the terms of the lease. *See Mire v. Hawkins; Harris v. J.C. Trahan Drilling Contractor, Inc.* Thus at least in oil and gas lease cancellation cases an accounting is ancillary to the action and exists for the equitable purpose of adjusting in one proceeding all the differences between the parties arising from the main cause of action." (Footnote omitted.)

Thus, on the basis of this well-settled authority, the Court finds that plaintiffs were not entitled to an accounting prior to this trial. This procedural result is mandated by the statutory scheme set forth in the

Mineral Code, La.R.S. 31:137 and :138, :139, :140 providing for the redress of royalty owner claims.

**§ 137. Nonpayment of royalties; notice prerequisite to judicial demand**

If a mineral lessor seeks relief for the failure to his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.

Added by Acts 1974, No. 50, § 1, eff. Jan. 1, 1975.

**§ 138. Required response of lessee to notice**

The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the royalties or stating or failing to state a reasonable cause for nonpayment within this period has the following effect on the remedies of dissolution and damages.

Added by Acts 1974, No. 50, § 1, eff. Jan. 1, 1975.

**§ 139. Effect of payment in response to notice**

If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor.

Added by Acts 1974, No. 50, § 1, eff. Jan. 1, 1975.

**§ 140. Effect of nonpayment in response to notice or failure to state cause therefor**

If the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the required notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay royalties. The court may also dissolve the lease in its discretion.

Added by Acts 1974, No. 50, § 1, eff. Jan. 1, 1975.

 The Mineral Code does not provide a mineral lessor with the right to an accounting prior to the filing of suit, but provides only for the award of damages or lease cancellation in a judicial action to determine whether royalties have been properly paid.

**IV. CONCLUSION**

Although Amoco is licensed by the State as a unit operator and collects severance taxes on the minerals which are produced from the various units, the Court finds that Amoco is not subject to the Louisiana Public Records Act. Therefore, plaintiffs' motion on this issue is DENIED. The Court further finds that plaintiffs were not entitled to an accounting prior to trial. Hence, the Court DENIES plaintiffs' motion for sanctions for failing to provide an accounting prior to trial.