365 So.2d 294 (1978)
Boyce J. TRAHAN et al., Plaintiffs-Appellants,
v.
Roger P. LARIVEE et al., Defendants-Appellees.
No. 6810.
Court of Appeal of Louisiana, Third Circuit.
November 15, 1978.
Writ Refused January 12, 1979.
*295 Mike Harson, Lafayette, for plaintiffs-appellants.
Ronald J. Judice, Lafayette, for defendants-appellees.
Before GUIDRY, FORET and CUTRER, JJ.
CUTRER, Judge.
Plaintiffs Boyce J. Trahan and Radio Station KVOL instituted this action seeking a determination of whether certain documents held by the City of Lafayette were public records subject to inspection. Made defendants were Robert P. Larivee, Chief Administrative Officer for the City of Lafayette, and Kenneth F. Bowen, Mayor of Lafayette.
This suit was previously before this court on appeal along with a companion case of City of Lafayette v. Trahan, 359 So.2d 331 (La.App. 3rd Cir. 1978); rehearing denied June 15, 1978. These cases were remanded for the purpose of adding indispensable parties. We ordered that the City Directors of Lafayette be made parties to both suits. Upon remand the directors were joined as parties defendant in this case, Boyce J. Trahan, et al v. Roger P. Larivee, et al, our docket No. 6810. The directors were not joined in the companion suit of City of Lafayette, et al v. Jim Trahan and Radio Station KVOL, Inc., our docket No. 6811.[1]
The directors so joined were John Q. Hyde, David Warren, Glenn M. Weber, Phillip Lank, E. Glynn Abel, Sylvan Richard, George Landry, and Wayne Prejean. It was stipulated that the reports at issue were only those concerning Glenn M. Weber, Phillip Lank, E. Glynn Abel, Sylvan Richard, and Wayne Prejean.
From a trial court judgment in favor of the city and its officials decreeing that the documents were not subject to public inspection, Trahan and Radio Station KVOL appeal. Pursuant to the requirements of LSA-R.S. 44:35, this appeal was given preference status.

*296 THE FACTS
The facts of this case are not in dispute. The City of Lafayette has implemented a policy of employee performance ratings. Since April 1, 1975, substantially all city employees below the director level in the various city departments have been rated from time to time. In the latter half of 1977, a similar performance rating was prepared on all directors of the various city departments. This evaluation was conducted pursuant to the direction of the mayor with the chief administrative officer serving as the rater. On January 6, 1978, Trahan, who is vice president and general manager of KVOL, gave Larivee, who is custodian of the records, written notice of Trahan's and KVOL's intent to request access to the evaluation reports on the department directors. Larivee refused to deliver the reports to Trahan on January 10, 1978, but advised Trahan that access would be granted provided that Trahan secured written consent from each individual director. All but one of the city directors refused to give Trahan consent to review the reports. Larivee refused to turn over the documents a second time. From this latter refusal, litigation ensued.
In carrying out the employee performance rating program, the city utilizes a rating manual and evaluation form. Although the actual evaluation reports in question are not in the record, we have access to the rating manual and a copy of the evaluation form used by the rater. The purpose of the performance rating program is stated in the manual as follows:

"II. PURPOSE OF THE PERFORMANCE RATING PROGRAM
"The goal of the Employee Performance Rating System is to permit supervisory personnel to evaluate the performance of employees in the accomplishment of their assigned duties and responsibilities by established standards. Performance ratings are intended for use in connection with the following matters:
"A. Granting permanent status to probationary employees.
"B. Awarding merit raises. (Performance reports in connection with merit raises must clearly reflect above average performance).
"C. Counseling employees regarding work problems.
"D. Providing recognition for superior performance.
"E. Demotions, dismissals, and disciplinary actions.
"F. Determining training needs.
"G. Re-employment decisions."
The rating manual provides for the procedure to be followed in the rating program. The final report is forwarded to the administrating authority, and from there, the original of the report is sent to the Personnel Department and a duplicate copy is given to the employee.
The form used for the evaluation of employees contains four sections: performance review,[2] comments of rater, comments of reviewer, and employee's review and comments.
*297 In this case, Larivee served as the rater and the evaluation was carried out in substantial conformity with the principles outlined in the rating manual to the extent that said manual could be adapted to a rating of department heads. The employee performance report form, described previously, was also used in carrying out the evaluation.
The trial judge, in written reasons for judgment, felt that these performance evaluation
 *298 reports did not fall within the intended coverage of the "public records law" and were not subject to public inspection. The trial judge also was of the opinion that Art. 1 § 5 of the Louisiana Constitution of 1974 contains a built-in exemption to the public records law and that disclosure of the documents in question would seriously infringe on the privacy of the city employees.
The issue before the court is whether performance evaluation reports of the directors of various departments of the City of Lafayette are public records subject to examination under Louisiana's Public Records Law (LSA-R.S. 44:1 et seq.).
If such reports are found to be public records, the second issue arises as to whether the publication thereof would be an "invasion of privacy" under the prohibition of Louisiana Constitution Article I, § 5, 1974.

DO THESE RECORDS CONSTITUTE "PUBLIC RECORDS"?
The initial question to be resolved is whether these performance evaluation reports fall within the definition of "public records." LSA-R.S. 44:1 A defines "public records" as:
"All records, writings, accounts, letters and letter books, maps, drawings, memoranda and papers, and all copies or duplicates thereof, and all photographs or other similar reproductions of the same, having been used, being in use, or prepared for use in the conduct, transaction or performance of any business, transaction, work, duty or function which was conducted, transacted or performed by or under the authority of the Constitution or the laws of this state, or the ordinances or mandates or orders of any municipal or parish government or officer or any board or commission or office established or set up by the Constitution or the laws of this state, or concerning or relating to the receipt or payment of any money received or paid by or under the authority of the Constitution or the laws of this State are public records, subject to the provisions of this Chapter except as hereinafter provided."
The act also lists certain exemptions.[3] We note, however, that personnel evaluation reports are not among the records which are exempt.
The Louisiana Public Records Law was obviously intended to implement the inherent right of the public to be reasonably informed as to the manner, basis, and reasons upon which governmental affairs are conducted. Laws providing for the examination of public records must be liberally interpreted to extend rather than restrict access to public records. Bartels v. Roussel, 303 So.2d 833 (La.App. 1st Cir. 1974), writ denied 307 So.2d 372 (1975).
The reports in question were written documents prepared pursuant to the orders of the chief elected official of the City of Lafayette and were to be utilized to evaluate job performance of the various department heads in the city administration. We find that these reports fall within the broad definition of "public records" as set forth by the legislature.

RIGHT OF PRIVACY
Having concluded that performance evaluation reports are encompassed within the broad definition of the "public records law," we must determine if publication or disclosure should be denied as being an invasion *299 of privacy of the employee under the provisions of La.Const. art. I § 5, 1974, which provides in pertinent part:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." [Emphasis added.]
The "invasion of privacy" has been recognized in this state beginning 167 years ago. Denis v. Laclerc, 1 Mart., O.S. 297 (1811). Tooley v. Canal Motors, Inc., 296 So.2d 453 (La.App. 4th Cir. 1974) defined the right of privacy as follows:
"`It has been defined as "the right to be let alone" and as "the right to live one's life in seclusion without being subjected to unwarranted and undesired publicity."'
* * * * * *
"As appears from the cited cases and as discussed at length in the Comment at 28 La.Law Rev. (April 1968) malicious intent on the part of the defendant is not a necessary element in the prosecution of an invasion of privacy claim. If the defendant's conduct is unreasonable and seriously interferes with plaintiff's privacy the invasion is actionable."
With this background in mind, we next turn to the jurisprudence which may assist us in determining the issue herein. Finding no Louisiana cases on this issue, we turn to the federal cases for their treatment of the subject.
The Freedom of Information Act (FOIA) enacted by Congress provides that federal agencies shall make certain information and records available to the public. Personnel files are exempt under the FOIA if such disclosure "would constitute a clearly unwarranted invasion of personal privacy."
In the case of Vaughn v. Rosen, 383 F.Supp. 1049 (D.C., D.C.1974) one of the issues presented to the court was whether the disclosure of Civil Service Commission records, which contained evaluations of agency officials who were referred to by name and title, was an unwarranted invasion of the officials' privacy. The court, holding that such evaluations of these agency officials were exempt from disclosure as being unwarranted invasions of privacy, held as follows:
"Release of the desired information would clearly constitute an invasion of personal privacy. Identification of evaluated employees could expose them to practical disabilities, such as loss of future employment or friends, and perhaps acute embarrassment. While the mere loss of anonymity may be considered only a minor invasion of privacy, to disclose an individual's name together with an evaluation and criticism of his job performance is certainly a serious invasion which would better be kept secret."
The above portion of the Vaughn decision was not appealed. There were other issues involved which were appealed and affirmed. Vaughn v. Rosen, 173 U.S.App.D.C. 187, 523 F.2d 1136 (1975).
For other cases, where personnel records of named employees were likewise held to be exempt as being an invasion of privacy, see Metropolitan Life Insurance Company v. Usery, consolidated with National Organization for Women v. Social Security Administration, 426 F.Supp. 150 (D.C., D.C. 1976) and Campbell v. United States Civil Service Commission, 539 F.2d 58 (10th Cir. 1976).
With these principles in mind we examine the performance evaluation report forms and the rating manual to determine whether disclosure may be an invasion of the privacy of the employees affected.
These forms result in detailed comments of the rater as to the employee's personal attitude and attributes on 25 different factors. Each factor is rated on a point system ranging from 1 to 9 points, depending on whether he is rated as Unsatisfactory, Improvement needed, Satisfactory, Above Average, or Outstanding. The manual contains guidelines for the rater to use in making the performance evaluations on each factor. For instance, under the factor of "Job Attitude" the manual contains the following guidelines in this regard:
*300
"8. JOB ATTITUDE:
POINTS APPLICABLE DESCRIPTION
1 _ _ _ _ Lack of job interest, resentful and uncooperative.
 Constantly complains and
 stirs up trouble.
3 _ _ _ _ Displays reluctancy in following rules
 or orders. Does not show interest
 in bettering job knowledge or bettering
 job performance.
5 _ _ _ _ Usually cooperative and usually displays
 good attitude in following rules
 and orders. Displays some interest in
 learning more about job and in bettering
 work performance.
7 _ _ _ _ Willingly and enthusiastically cooperates
 with others, and in following
 rules and orders. Willingly tries to
 learn more about job and improve work
 performance.
9 _ _ _ _ Usually excellent attitude and enthusiastic
 in cooperation with others, and
 in following rules and procedures. Goes
 out of way to learn more about job
 and to excel in job performance. Tries
 to help others in their job performance."
By giving the employee a certain point rating in each factor, the rater is expressing an opinion as to that employee's aptitude as to that factor. The opinion of the rater may be based upon hearsay, fact, or any other reason he may want to use for giving an employee a certain rating.
We point out this process in some detail to show that the evaluation report is very personal and directly affects the employee. To publish or disclose such personal opinions may embarrass or humiliate the employee among his fellow employees, friends or family. It may affect his future employment. Humiliation or embarrassment could flow even though the rating would be "outstanding" as this rating may create envy or jealousy in other employees. Metropolitan v. Usery, supra.
We conclude and do hold that to publish or disclose such reports would be an "invasion of privacy" and is prohibited by the provisions of Art. I, § 5 of the La.Const. of 1974.
We came to this conclusion fully cognizant of the public's constitutional "right to know" as accorded by Art. 12, § 3 of the La.Const. of 1974, which provides as follows:
"Section 3. No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law."
The two constitutional provisions under consideration enunciate doctrines which involve the decision of which interest shall prevail, the protection of an individual's private affairs from unnecessary public scrutiny, or the preservation of the public's right to governmental information.
The purpose of performance rating reports in this case is to provide employees' superiors the information with which to evaluate the performance of such employees. By virtue of such evaluation, the administrating authority is better able to make a determination of whether to grant an employee permanent status, whether to award merit raises, provide counseling, recognize superior or inferior performance, and other matters which pertain to good management. It can be said that these reports serve as a management tool in the administration of efficient government. To accomplish this, the administrator needs an evaluation which is as accurate as possible. He needs one which is objective and candid. Confidentiality of these evaluations is vital. If the person making the evaluations knew that they may be disclosed to the public, his evaluation may easily be less than accurate, objective or candid. The public interest in efficient government is better served by keeping these evaluations confidential. Having so concluded, we hold that the individual rights of the employees herein shall prevail over the public's "right to know."
For these reasons, the judgment of the trial court is hereby affirmed. Appellants to pay costs of this appeal.
AFFIRMED.
FORET, J., concurs and assigns written reasons.
FORET, Judge, concurring.
I concur in the result reached by the majority in this case. However, I am of the opinion that the trial court was correct in *301 its conclusion that these personnel evaluation reports were not public records within the intendment of LSA-R.S. 44:1 A. In my mind, these personnel evaluation reports are of prime importance to department heads and other chief executive officers. To require their disclosure to the general public, including the news media, serves no useful purpose, and could very well result in the elimination of personnel evaluation reports altogether.
The legislature, in R.S. Section 44:1 B et seq exempts a myriad of other documents. I believe that it was a mere oversight of the legislature to not also exempt personnel evaluation reports.
For the reasons stated above, I do not believe that we need to reach the issue of invasion of privacy.
I respectfully concur in the result.
NOTES
[1] Pending appeal the companion case of City of Lafayette, et al v. Jim Trahan and Radio Station KVOL, Inc., our docket No. 6811, was dismissed upon joint motion of the parties. It was stipulated, however, that costs in No. 6811 were to be assessed by this court according to cost assessment in No. 6810.
[2] See note 2 on page 297.
[3] Section 44:1 B exempts, under certain conditions, electric logs that are produced from oil and gas wells and are filed with the Commissioner of Conservation. Section 44:2 exempts certain records involved in legislative investigations. Various records held by prosecutive, investigative and law enforcement agencies are exempted under Section 44:3. Tax returns and records relating to old age assistance, aid to the blind, aid to dependent children, and liquidation proceedings are a few of the exemptions found in Section 44:4. Records of the governor, except those pertaining to money or financial transactions, are exempt under Section 44:5. Certain hospital records are made exempt by the provisions of Section 44:7. In Section 44:9, affidavits relating to expungement of certain arrest records are not subject to public inspection. Finally, all documents filed with, and evidence in proceedings before the Judiciary Commission, are deemed confidential under Section 44:10.