775 So.2d 634 (2000)
Alison F. KIRKHAM, Plaintiff-Appellant,
v.
Heith E. PUMPHREY, Defendant-Appellee.
No. 34,349-CA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2000.
*635 Abrams & LaFargue By Reginald W. Abrams, Julie Lafargue, Rountree, Cox, Guin & Achee By Dale G. Cox, Shreveport, Mary L. Blackley, Shreveport, Counsel for Appellee.
Lunn, Irion, Salley, Carlisle & Gardner By James A. Mijalis, Shreveport, Counsel for Appellant.
Before STEWART, WILLIAMS and DREW, JJ.
DREW, J.
Plaintiff, Alison F. Kirkham, appealed from a judgment rejecting her action for damages for assault and intentional infliction of emotional distress arising out of a Shreveport encounter with Heith E. Pumphrey, an off-duty Bossier City police officer. Plaintiff asserted that the trial court erred in concluding that there was insufficient evidence to support her claim that she was damaged when Pumphrey stopped, exited his vehicle and approached her car to complain about her driving. Primarily because there were erroneous statements in the trial court's reasons, Kirkham contended on appeal that the trial court's ruling was clearly wrong and that she should have been awarded damages. The judgment of the trial court is affirmed.

PROCEDURAL BACKGROUND AND TESTIMONY
Kirkham made the following allegations in her petition: On December 14, 1996, she was driving west on Albany Street in Shreveport and Pumphrey was driving a pick-up directly in front of her; Pumphrey repeatedly accelerated, made sudden stops and then turned his vehicle to block both lanes; Pumphrey exited his truck while screaming at Kirkham and demanded Kirkham get out of her car; Kirkham was frightened and refused to get out, but could not retreat because parked cars on both sides of the street blocked her; Pumphrey had a holstered gun on his hip and a badge but did not identify himself as a police officer; When Kirkham stated she was too frightened to roll her window down, Pumphrey said "I'll show you frightened;" Not knowing if he was a policeman or was impersonating one, Kirkham believed she was about to be harmed or battered; Kirkham suffered damages due to fear, disturbed sleep and nightmares.
Pumphrey denied Kirkham's allegations and named his insurer, Allstate Insurance Company, as a third party defendant. Allstate denied it provided Pumphrey coverage for Kirkham's claims. Allstate sought a summary judgment which was denied by the trial court. A bench trial was conducted on September 7, 1999.
At trial, Kirkham testified that after leaving Thrifty Liquor where she bought Christmas gifts, she proceeded down Albany to the El Chico's on Fern where she was meeting relatives. She denied drinking or taking drugs. Kirkham stated the street was thirty feet wide and acknowledged that cars could proceed in both directions even with cars parked on both sides of the roadway. Kirkham saw a dark green truck with bucket seats occupied *636 only by the driver. A chair was in the bed of the truck.
Kirkham testified that she noticed the truck because it was accelerating and then stopping suddenly which caused her to brake hard to avoid hitting the truck. This happened repeatedly. She did not see the chair shifting in the back of the truck. According to Kirkham, both vehicles stopped at the intersection of Akard and Albany. The truck proceeded through the intersection and again stopped suddenly which caused Kirkham to slam on her brakes. At that point, Kirkham eased over to see if she could determine what was causing the truck to be driven in that manner. She stated she could see nothing and then eased back behind the truck. Kirkham denied trying to pass the truck and asserted she never got up even with the truck.
According to Kirkham, Pumphrey suddenly slammed on his brakes which made a loud screeching sound and turned to the left so that the entire roadway was blocked. He jumped out of his truck and was by her window screaming at her and demanding that she get out of her car. Subsequently, Kirkham learned that Pumphrey was a Bossier City police officer. Kirkham stated that Pumphrey was wearing a gun and that he put his hand on his hip where the gun was located. She said that he demanded that she roll her window down and banged his finger on her car window over and over. Describing Pumphrey as in a rage, Kirkham testified that he stated "I will show you frightened" when she informed him she was afraid to get out of her car. Kirkham said that she wondered whether Pumphrey was impersonating an officer. Attired in jeans and a collared shirt, Kirkham stated he had a gun and badge on his belt and never identified himself as a police officer.
Kirkham stated she could not move her car forward and could not back up because of a parked car. The incident ended when Kirkham wrote down Pumphrey's license number. Pumphrey walked to the back of her car. He then got into his truck and turned into a driveway at a house on Albany which she later learned was Pumphrey's residence. Kirkham proceeded to El Chico's. Kirkham was upset but afraid that if she reported the incident, the man would know who she was and possibly harm her.
Kirkham testified that on the Monday following the Saturday confrontation she reported the encounter to the Shreveport police whose investigation revealed Pumphrey was a Bossier City officer living in Shreveport. The next day, Kirkham reported the event to the Bossier City Police Department. Because she was dissatisfied with the response of the Bossier City Police Department, she wrote a letter to the Bossier City Chief of Police.
Kirkham described another incident ten or twelve years earlier. Men in another car began shouting obscenities at her and a female companion as both vehicles were stopped at a railroad crossing. When they rolled down the window to tell them to stop, one of the men got out and started kicking her new car. Kirkham got out to check for damage and the man beat her. She reported the altercation to police, but the man was never found.
Pumphrey's testimony was that he was accompanied in the truck by his wife who is 5' 11" tall. She was seated in the passenger bucket seat and, in his opinion, clearly visible to someone driving behind his truck. Pumphrey stated that he and his wife had been to the Shreve Island home of people his wife knew in order to pick up an antique chaise lounge chair they had purchased at a garage sale. Pumphrey had placed the chair in the bed of his pick-up, but had not tied it down with anything. To reach his home on Albany, Pumphrey said he drove westbound down Albany where the speed limit was 25 MPH. Pumphrey described the area as an average neighborhood street with cars parked at the curbs on both sides. According to Pumphrey, the traffic was moderate *637 and children and pets frequently crossed the street. The street has no yellow line indicating a no passing zone. Although Pumphrey answered at his deposition that Kirkham's actions were a legal passing maneuver, he had learned by the time of trial that it is a violation to pass near an intersection.
Pumphrey stopped at the stop sign at the intersection of Albany and Akard. As he was leaving the intersection, he observed a blue car come up behind and approach the side of his truck. Pumphrey stated that the maneuver spooked him, so he sped up and the car got behind his vehicle. Pumphrey then stopped his truck facing forward, put it in park and got out, leaving his door open. Pumphrey testified that he was mostly in his lane of travel and could have been over the line, but denied he turned his vehicle into the other eastbound lane to block Kirkham's vehicle. Pumphrey said he walked back to the car and asked the driver to roll down the window so he could speak to her. Kirkham stated she was frightened and got out a pen and paper to write. Pumphrey stated he knew the situation was "going bad" and he took a step or two back. He memorized Kirkham's license number, returned to his truck and went home. He estimated the encounter took 45 seconds. The defendant denied that he yelled, screamed or demanded she get out of her car. Pumphrey testified he planned to tell her that there were kids and animals frequently in the street and that she needed to be more careful. When he realized it was a bad situation, he tried to alleviate it as quickly as he could. Stating he had no intention of making Kirkham apprehensive, Pumphrey denied assaulting her or acting as though he intended to harm her.
On the day of the altercation, Pumphrey testified he was wearing jeans and a collared shirt with the shirttail concealing his gun and badge. Although he did not know how, he stated that his shirt may have gotten behind the gun when he put on his seatbelt. He acknowledged that he put his hand on his hip, but he was not acting as a police office when he approached Kirkham's car. Pumphrey explained that he memorized Kirkham's license intending to report her to Shreveport police. Although he wrote the license number down when he reached his home, he later threw it away after deciding not to pursue the matter. On cross examination, Pumphrey acknowledged the wind could have blown his shirt and exposed his weapon and denied touching the Kirkham vehicle. Pumphrey described his mood as concerned, not upset.
Pumphrey's wife testified that she was seated in the front passenger seat of the truck with Pumphrey when this incident took place. They were returning to their home on Albany after purchasing an antique chaise lounge chair at a garage sale. The chair in the bed of the pick-up was not tied down. She estimated Pumphrey's speed at 28 MPH. Mrs. Pumphrey stated that her husband never stopped, jerked the truck or slammed on his brakes on Albany. The only time Pumphrey stopped the vehicle was at the stop sign at the intersection of Albany and Akard where she saw a little girl running across the street. Pumphrey started through the stop sign and was accelerating when a car tried to come around their truck. Defendant's wife said that due to Pumphrey's acceleration, the car could not get around them and pulled back behind them at which point Pumphrey stopped his truck westbound in his normal lane of travel. She testified that Pumphrey got out of the truck leaving his door open, walked back and asked the driver to roll down the window. Stating there was no yelling or screaming, she heard her husband say OK to whatever the driver replied to him. She did not hear defendant demand the driver exit her car or threaten her. Mrs. Pumphrey said he walked to the back of plaintiff's car, stood there a minute to get the licence number, she thought, then got back in the truck and drove to their residence. Mrs. Pumphrey estimated the encounter *638 took 30 seconds and stated that Kirkham could have backed her car up and pulled around their truck to leave the scene. When the couple got home, they made arrangements to unload the chair and Pumphrey decided not to pursue the matter with the Shreveport police. On cross-examination, Mrs. Pumphrey stated her husband drove carefully and the chair did not shift or slide in the bed of the truck which was coated with a rubberized coating that acts like a gripper.
Also testifying for the defense was Bossier City policeman Richard Burton who recounted giving Kirkham a ticket for running a red light on June 13, 1996. He asked that she get out of her vehicle and stated that she did not appear to be upset or crying. He asked for and got her driver's license. She informed him she was in a hurry because she needed to get some make-up and her grandmother was dying. She told him that if he gave her a ticket, she would have a nervous breakdown. He explained that he was writing the ticket which was not an admission of guilt and that she could contest it in court. When he began writing the ticket, Burton stated that Kirkham began crying and yelling and was in a rage. He asked if she needed medical attention and she stated she did. Burton testified he called the EMS and his supervisor arrived. EMS personnel checked Kirkham and released her at the scene. On cross examination, Burton stated that he testified at her trial on the red light ticket and that Kirkham was found not guilty.
During Kirkham's testimony, she explained that she was not crying in response to getting the ticket, but was crying when she was stopped because she had just learned that her grandmother had an inoperable heart condition and was critically ill. Kirkham stated that at the trial on the ticket, Burton testified that Kirkham stated to him she was crying about her grandmother.

REASONS FOR JUDGMENT
In written reasons, the trial court summarized the testimony of Kirkham, Pumphrey and his wife. Defining assault as an attempt to commit a battery or intentional placing of another in reasonable apprehension of receiving a battery (La. R.S. 14:36), the trial court found there was no evidence that plaintiff was in a position to believe she was in danger of receiving a battery and insufficient evidence to find legal fault on the part of the defendant.

DISCUSSION
An appeal lies from the judgment itself, not the reasons for judgment. When the record contains a reasonable factual basis for the findings of the trier of fact, and those finding are not manifestly erroneous, an appellate court should affirm the judgment made in the lower court. Wilson v. Wilson, 30,445 (La.App.2d Cir.4/09/98), 714 So.2d 35.
On appeal, Kirkham alleged that the trial court made erroneous statements in its reasons for judgment. Kirkham objected to the trial court's statement that "He further stated as he drove off, he did not need to turn his truck indicating that he was not blocking the plaintiff." A large portion of the written reasons consisted of the trial court's summaries of various testimony, not factual findings. Kirkham testified that the street was wide for four cars abreast; i.e., cars to be parked on both curbsides and for two vehicles to pass each other traveling in opposite directions. Kirkham also stated that Pumphrey turned his vehicle sharply to the left and blocked her escape. In contrast, Pumphrey opined in his testimony that with cars parked on both curbs, it would be difficult for Kirkham to have passed his vehicle by going forward around it. Although Pumphrey stated he was stopped curbside in his lane of travel, he acknowledged he may have been over the middle line of the street because his vehicle was stopped next to a car parked at that curb. Pumphrey's wife corroborated his account *639 that the truck was not turned sharply into the other lane.
The trial court's reasons contains an incomplete sentence: "As she rolled down her window." Pumphrey and Kirkham testified that Kirkham refused to roll down her window. The trial court reasons included the defendant hit his hand on the window. Pumphrey denied that he touched her car. It is not possible to know whether that incomplete phrase is an error, but the trial court's reference to defendant's alleged touching the window shows the court was aware of the testimony that her window was not rolled down.
Included in the reasons for judgment is an erroneous reference to Kirkham having seen Dr. Seiden as a teenager. Kirkham's testimony was that she saw a counselor as a teenager. Further, there is no evidence in the trial court record concerning the trial court's statement, again contained in the summary of Kirkham's testimony, that "After she started drinking again, she had a panic attack." The trial court's conclusion that there was insufficient evidence to support Kirkham's action is not based on this misstatement which pertains to extent of damages only.
Kirkham also contended that the trial court erred in stating in written reasons that plaintiff had not had a nightmare in over a year. That testimony referred to the time period before this encounter with Pumphrey. Kirkham testified at trial that she still was infrequently troubled with nightmares. However, the nightmare testimony was confusing because Kirkham testified she had nightmares about the earlier beating incident following the confrontation that is the subject of this litigation. However, since that testimony concerned damages, any confusion about the nature or extent of the nightmares is not relevant.
In Stobart v. State, DOTD, 617 So.2d 880 (La.1993), the supreme court explained that an appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong". In order to reverse a factfinder's determinations, the appellate court must find from the record that a reasonable factual basis does not exist for the trial court's finding which the record establishes is clearly wrong. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. In doing so, the issue is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. Even when the appellate court feels its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony, unless documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story. However, if the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. It is well-settled that the trial court is in a better position to evaluate live witnesses. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, DOTD, supra.
The bottom line is the trial court accepted the account of this unfortunate encounter given by Pumphrey and his wife and rejected the version supplied by Kirkham. After hearing the witnesses and observing their demeanor, the trial court accepted the defendant's testimony that he and his wife were returning to their home with an antique chair which was not tied down in the bed of their truck. Pumphrey did not repeatedly slam on his brakes as he proceeded down the street. Kirkham acknowledged she did not see the chair shift in the truck bed. After stopping at a stop *640 sign, Pumphrey accelerated at which time Kirkham pulled her vehicle to the side of Pumphrey which spooked him and caused him to accelerate more. He stopped his truck and approached Kirkham's car to warn her to be more careful due to children and pets crossing the residential street. When she refused to roll down her window and stated she was frightened, Pumphrey stepped back. Kirkham wrote down his license number and Pumphrey memorized Kirkham's. Pumphrey then drove home. Pumphrey acknowledged he was wearing his holstered gun and badge under his shirttails which were outside his pants. Defendant admitted that the weapon could have inadvertently been exposed and that he placed his hand on his hip while talking to Kirkham. However, he stated he did not scream at or threaten the plaintiff during the brief episode.
A battery is the intentional use of force or violence upon another person or the intentional placing of another in reasonable apprehension of receiving a battery. An assault is an attempt to commit a battery. La. R.S. 14:33 and 14: 36. Notwithstanding the errors or misstatements in the trial judge's written reasons, our careful review of this record has revealed that the trial court's judgment was not manifestly erroneous or clearly wrong. Without in any way condoning the wisdom or propriety of Pumphrey's action in approaching Kirkham to discuss her driving, we affirm the trial court's ruling that Kirkham did not sustain her burden of proving that an assault occurred. This finding of no tortious conduct pretermits discussion of the remaining issues.

DECREE
For the foregoing reasons, the final judgment of the trial court is affirmed at plaintiff's costs.
AFFIRMED.