867 So.2d 1009 (2004)
Alison K. SKAMANGAS, Plaintiff-Appellant
v.
Larry STOCKTON, et al., Defendants-Appellees.
No. 37,996-CA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2004.
Order on Rehearing April 1, 2004.
*1010 Alison K. Skamangas, in Proper Person.
Cook, Yancey, King & Galloway, by Kenneth Mascagni, Robert Kennedy, Shreveport, for Appellees.
Before GASKINS, MOORE and LOLLEY, JJ.
GASKINS, J.
The plaintiff, Alison Kirkham Skamangas, appeals from the trial court's denial of her request for documents pertaining to a Bossier City police officer. We reverse and remand this case for further proceedings consistent with this opinion.

FACTS
In December 1996, the plaintiff, who was a paralegal, and Heith E. Pumphrey, an off-duty Bossier City police officer, were involved in a confrontation in Shreveport. According to the plaintiff, Pumphrey while dressed in civilian clothes and traveling in his private vehicleblocked her car with his vehicle and approached her with his hand on his hip near his plainly visible firearm. She said he acted in a threatening and verbally abusive manner which frightened her. Although he did not think she had violated any law, he supposedly wished to "discuss her driving with her." The officer admitted getting out of his vehicle to talk to the plaintiff but denied screaming at her or otherwise acting in a menacing manner.
In March 1997, the plaintiff filed suit against the officer in Caddo Parish for damages for assault and intentional infliction of emotional distress. Following a bench trial, the trial court ruled in favor of the officer. This court affirmed on appeal, Kirkham v. Pumphrey, 34,349 (La.App.2d Cir.12/20/00), 775 So.2d 634, writ denied, *1011 XXXX-XXXX (La.3/30/01), 788 So.2d 1191.[1]
During the pendency of the Caddo lawsuit, the plaintiff sought a subpoena duces tecum of Pumphrey's complete personnel file, including all documents and audio tapes pertaining to complaints about or investigations of the officer. Pumphrey requested a protective order and moved to quash the subpoena. The trial court found that the material sought was privileged and granted Pumphrey's motion.
On June 18, 2002, the plaintiff filed the instant suit, a petition for writ of mandamus, or alternatively for injunctive relief, against the City of Bossier City; Sergeant Larry Stockton, individually and as records custodian for the Internal Affairs Division of the Bossier City Police Department (BCPD); and Pumphrey. The plaintiff alleged that in late January and early February 2002, she had complied with the Louisiana Public Records Act, La. R.S. 44:1, et seq., when she requested documents pertaining to wrongful conduct by Pumphrey; however, she asserted that Stockton had refused to produce the documents. Instead, Stockton informed her in writing that internal affairs files were "not public records. These files are administrative and not released." The plaintiff further asserted that, contrary to La. R.S. 44:32(D), Stockton failed to cite the law exempting such records from inspection or copying.
The plaintiff requested that the court issue a writ of mandamus compelling the defendants to produce the documents or, alternatively, an injunction prohibiting them from withholding the items. She also sought civil penalties under La. R.S. 44:35(E)(1), as well as penalties and sanctions against Stockton under La. R.S. 44:37, 14:132 and 14:134(1). Finally she asked for an expedited hearing under La. R.S. 44:35(C) and La. C.C.P. art. 3782.
On July 9, 2002, the defendants filed a peremptory exception of res judicata and a dilatory exception of failure to conform the petition to La. C.C.P. art. 891(A). They argued that the issue of access to Pumphrey's internal affairs files had already been litigated in the Caddo lawsuit where the trial court had quashed the plaintiff's subpoena to obtain the officer's personnel file and all complaints or investigations involving him and granted the officer's motion for protective order. As to the dilatory exception, they alleged that the plaintiff failed to give an address for receipt of service. This was remedied in her first amended petition.
In opposition to the plaintiff's petition, the defendants filed the affidavits of Bossier City Police Chief K.M. Halphen and Assistant Police Chief Glenn Sproles. Chief Halphen stated that he utilized internal affairs investigations as a means to obtain feedback and criticism of police practices from within the department and from the public and that such investigations are an essential management tool. According to the chief, the BCPD has a policy of confidentiality to protect statements given by citizens under a promise of confidentiality or by officers under coerced waiver of their Fifth Amendment privilege; this policy is to insure an open channel for citizen complaints and "to promote full, candid communications with the internal affairs investigator." Assistant Chief Sproles, who was the BCPD Internal Affairs officer for three years, stated that the BCPD classifies its internal affairs investigations as confidential because they involve *1012 statements of officers with compelled waivers against self-incrimination, statements provided by witnesses who are assured confidentiality, citizen complaints which are often given on the basis of anonymity, and perceptions and opinions of internal affairs investigators which reflect confidential disclosures. According to Sproles, the effectiveness of internal affairs investigations requires "open and candid disclosure of information" which occurs on the basis of promised confidentiality. In Sproles' experience, persons with pertinent information are reluctant to share information about police misconduct and often refuse to provide information unless given assurance of confidentiality. Like the chief, the assistant chief averred that internal affairs investigations are an essential management tool in the BCPD and that the department maintains a policy of confidentiality to insure an open channel for citizen complaints and to promote full, candid communications with the internal affairs investigator.
A hearing was held on July 25, 2002. The defendants argued that they had supplied the plaintiff with everything in the Internal Affairs file except for items they deemed confidential; these confidential items consisted of 13 documents and two tapes which were related to an investigation of Pumphrey.[2] The trial court ruled on the merits that since the sought items involved an investigation of a law enforcement officer and were deemed confidential by the police department, the court likewise deemed them confidential and not subject to the Public Records Act. The court also declined to allow the plaintiff to question witnesses on the matter as it believed that would destroy the confidentiality of the records. The court chose to pretermit the res judicata issue.
A judgment denying the plaintiff's application for mandamus and/or injunction was signed on April 3, 2003.[3]
The plaintiff appeals.

LOUISIANA PUBLIC RECORDS ACT
The Louisiana Public Records Act, La. R.S. 44:1, et seq., provides for public access to information concerning state government as it is conducted through its many agencies. Fryar v. Guste, 371 So.2d 742 (La.1979). It is a product of La. Const. Art. 12, § 3, which provides:
No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.
La. R.S. 44:1(A)(2)(a) of the Louisiana Public Records Act defines "public records" as follows:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, *1013 memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records," except as otherwise provided in this Chapter or the Constitution of Louisiana.
The Louisiana Public Records Act was obviously intended to implement the inherent right of the public to be reasonably informed as to the manner, basis, and reasons upon which governmental affairs are conducted. Laws providing for the examination of public records must be liberally interpreted to extend rather than restrict access to public records. Trahan v. Larivee, 365 So.2d 294 (La.App. 3d Cir. 1978), writ denied, 366 So.2d 564 (La. 1979). See also Title Research Corporation v. Rausch, 450 So.2d 933 (La.1984); Bozeman v. Mack, 1997-2152 (La.App. 1st Cir.12/21/98), 744 So.2d 34, writ denied, XXXX-XXXX (La.3/19/99), 740 So.2d 113.
The act exempts certain records held by prosecutive, investigative, and law enforcement agencies. La. R.S. 44:3 provides in pertinent part:
A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, intelligence agencies, or publicly owned water districts of the state, which records are:
(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated until such litigation has been finally adjudicated or otherwise settled, except as otherwise provided in Subsection F of this Section; or
(2) Records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information; or
(3) Records containing security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof, criminal intelligence information pertaining to terrorist-related activity, or threat or vulnerability assessments collected or obtained in the prevention of terrorist-related activity, including but not limited to physical security information, proprietary information, operational plans, and the analysis of such information, or internal security information; or
(4)(a) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until a final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction. However, the initial report of the officer or officers investigating a complaint, but not to apply to any followup or subsequent report or investigation, records of *1014 the booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, records of the issuance of a summons or citation, and records of the filing of a bill of information shall be a public record.
The privileges granted under La. R.S. 44:3(A) have been strictly construed. The Louisiana Supreme Court in Fryar v. Guste, supra, clarified that a confidential informant is one who has or claims to have knowledge of a particular criminal matter or event and is only willing to give such information to representatives of a law enforcement agency provided his identity is kept secret or in confidence. A person who gives information without this assertion of confidentiality is not a confidential informant. See also Freeman v. Guaranty Broadcasting Corp., 498 So.2d 218 (La. App. 1st Cir.1986); United States Department of Justice v. Landano, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Likewise, a general assertion that information might be used some time in the future does not qualify as information relating to ongoing criminal litigation. Freeman, supra.

RIGHT TO PRIVACY
La. Const. Art. 1, § 5 states, in relevant part:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.
The determination of whether a document containing private information should be exempt from disclosure involves competing constitutional interests of right of access to public records and right to privacy. The first determination is whether a reasonable expectation of privacy exists. If so, then the court must balance the public records disclosure interest against the privacy interest. Alliance for Affordable Energy v. Frick, 96-1763 (La. App. 4th Cir.5/28/97), 695 So.2d 1126. The test for determining whether one has a reasonable expectation of privacy which is constitutionally protected "is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable." Capital City Press v. East Baton Rouge Parish Metropolitan Council, 96-1979 (La.7/1/97), 696 So.2d 562.
This reasonable expectation of privacy is embodied in La. R.S. 40:2532, which provides that a police officer's personal, private information shall not be disclosed without his permission:
No person, agency, or department shall release to the news media, press or any other public information agency, a law enforcement officer's home address, photograph, or any information that may be deemed otherwise confidential, without the express written consent of the law enforcement officer, with respect to an investigation of the law enforcement officer.
In Trahan v. Larivee, supra, the Third Circuit weighed the right of access to public records against the right to privacy. Although the court found that job evaluations of various city department heads were public records, it determined that disclosure of the documents should be denied as an invasion of privacy of the employees affected. The court considered that the evaluation report was very personal and directly affected the employee. The disclosure of personal opinions, the court surmised, might embarrass or humiliate the employee, even if favorable, and also might affect future employment. In concluding that the disclosure should be denied, the court reasoned that to promote *1015 accurate and candid evaluations, confidentiality of the evaluations was vital. It found that the evaluations were a management tool in the administration of efficient government. Thus, the public interest was better served by keeping the evaluations confidential. See also Marine Shale Processors, Inc. v. State, Through Department of Health and Hospitals, 572 So.2d 280 (La.App. 1st Cir.1990), in which the court held that the Louisiana constitutional right to privacy prohibited disclosure of the identity of private citizens who willingly participated in a public health study.

DISCUSSION
The plaintiff complains of a myriad of alleged minor errors by the trial court, including failing to give her a preferential setting and rushing through the hearing without giving her adequate time to present her case. More substantively, she contends that the trial court erred in accepting the defendants' bald assertion that the records were confidential and in failing to allow examination of witnesses to challenge the claim of privilege. In support of her position that complaints against a law enforcement officer, including internal affair files, are public records subject to disclosure, the plaintiff cites two opinions rendered by the Office of the Louisiana Attorney General.
The defendants argue that the 13 documents and two tapes not already provided to the plaintiff were derived from confidential interviews by the investigator for internal affairs. They maintain that this confidential information fits within the exception created by La. R.S. 40:2532 and La. R.S. 44:3(2). They further assert that releasing this information would constitute an unwarranted invasion of privacy. In support of their position that some material should not be disclosed as it would amount to an invasion of privacy, the defendants cite Trahan v. Larivee, supra, and La. Atty. Gen. Op. No. 93-333 (7/27/93).
The attorney general stated in La. Atty. Gen. Op. No. 93-333 that, even though a record of a formal complaint against an officer was a public record, an agency had "considerable discretion" under La. R.S. 40:2532 to determine what confidential information should be deleted from records prior to disclosure.[4] As to constitutional privacy concerns, a two-pronged test should be applied. The officer must have a reasonable expectation of privacy as to the material sought; if he does not, the inquiry ends. If he has a reasonable expectation, then one must balance the public records disclosure interest of the public against the privacy interest of the individual. In summary, the opinion stated:
On this point, it is our opinion that generally, these records are public records, subject to disclosure. That information specifically exempted by LSA-R.S. 40:2532 should be deleted prior to the release of these records, absent the officer's written consent to the disclosure. It is our further opinion that it would be necessary to examine these records on a case-by-case basis in order to evaluate the legality of the disclosure of all such information contained therein, in light of the statutory and constitutional exemptions prohibiting the disclosure of certain "confidential" information.[5]
*1016 In Amoco Production Co. v. Landry, 426 So.2d 220 (La.App. 4th Cir.1982), writ denied, 433 So.2d 164 (La.1983), several oil companies sought to compel the Louisiana Board of Professional Engineers and Land Surveyors to allow inspections of the records of disciplinary hearings involving engineers of two companies. The appellate court found that the documents were public records and their release would not violate the constitutional right of privacy of the engineers involved in hearings. In so holding, the court considered the Trahan case:
The only reported Louisiana decision holding public records exempt from disclosure based on claims of privacy is Trahan v. Larivee, 365 So.2d 294 (La. App. 3rd Cir.1978), which held that performance evaluations in the personnel files of municipal employees were private. Such performance evaluations are readily distinguishable from the records sought in the instant case. The performance evaluations were not compiled by the City in connection with formal hearings held concerning these employees, nor were the employees charged with any misconduct. They were not records of any formal proceedings by the City, but were records of a nature any private employer would maintain on its employees. The records that appellants seek in the case before us are records of formal proceedings of the Board conducted in the exercise of its statutory function to discipline license [sic] engineers. Thus there could be no reasonable expectation of privacy by the appellees. [Emphasis theirs.]
Other states have taken varying approaches to disclosure of internal affairs files. In Cowles Publishing Company v. State Patrol, 109 Wash.2d 712, 748 P.2d 597 (1988), none of the parties argued that the records sought were not public records. The court found that a statutory personal information exemption did not prohibit disclosure of the names of officers against whom complaints had been sustained; such disclosure did not constitute an unreasonable invasion of personal privacy. The officers' actions while performing public duties or improper off-duty actions in public which bore upon their ability to perform their public office were not activities protected as matters of personal privacy, and a reasonable person would not be offended by disclosure of their names. However, the court concluded that an investigative records exemption did protect the names of the officers against whom complaints were sustained, complainants and witnesses, from disclosure since officers' cooperation in internal investigation was frequently available because they knew the incident would be kept confidential.
In Direct Action for Rights and Equality v. Gannon, 713 A.2d 218 (R.I.1998), a Rhode Island court found that police civilian complaint reports were "public documents" required to be disclosed upon request in redacted form whenever final action occurred. However, the court also determined that the findings need not be disclosed as they were not records representing final action under the statute. In Bolm v. Custodian of Records of the Tucson Police Department, 193 Ariz. 35, 969 P.2d 200 (1998), an Arizona appellate court refused to fashion a blanket rule protecting law enforcement personnel and internal affairs records from a public records request, finding instead a balancing test should be applied on a case-by-case *1017 basis to determine whether a particular record should be released. It also approved the practice of a trial court generally conducting an in camera inspection in such a situation. In Worcester Telegram & Gazette Corporation v. Chief of Police of Worcester, 58 Mass.App.Ct. 1, 787 N.E.2d 602 (2003), review denied, 440 Mass. 1103, 795 N.E.2d 574 (2003), the court found that a police chief's memorandum to an officer under investigation was exempt personnel file information while documents from the internal affairs investigation were not. It concluded that a "citizenry's full and fair assessment of a police department's internal investigation of its officer's actions promotes the core value of trust between citizens and police essential to law enforcement and the protection of constitutional rights." The court stated that it would be odd "to shield from the light of public scrutiny" a process "whose quintessential purpose is to inspire public confidence."
The U.S. Supreme Court has ruled, in a criminal case, a police officer defendant who gave a statement under threat of loss of his livelihood, was not voluntary and could not be admitted at the criminal trial of the police officer. Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

JUDICIAL REVIEW
In the instant case, the defendants seek, as a matter of law, a blanket presumption that all information in internal affairs files is confidential and therefore exempt from disclosure.[6] Whether such a record is subject to disclosure must be determined at an adversary hearing on a case by case basis. La. R.S. 44:3(C); Cormier v. Public Records Request of Di Guilio, 553 So.2d 806 (La.1989); Harrison v. Norris, 569 So.2d 585 (La.App. 2d Cir. 1990), writ denied, 571 So.2d 657 (La. 1990); Revere v. Layrisson, 593 So.2d 397 (La.App. 1st Cir.1991).
La. R.S. 44:3 requires more than judicial acceptance of a general assertion of privilege. A meaningful opportunity must be afforded for cross-examination and presentation of evidence to contradict the claim of privilege. Cormier, supra; Conella v. Johnson, 345 So.2d 498 (La. 1977); Freeman v. Guaranty Broadcasting Corp., supra; Elliott v. Taylor, 614 So.2d 126 (La.App. 4th Cir.1993). This does not mean that the defendant must name the source or describe the informant or information with such particularity that the record is revealed before the judge adjudicates its disclosure. The nature of the document must be revealed, however, as well as the assertion of privilege so that the requesting party may make a meaningful cross-examination. Further, the assertion of privilege must be made individually as to particular documents, and not in globo against the entirety of a mass of records. Freeman, supra.
In Freeman, supra, the appellate court gave the trial court guidance on how to proceed with an adversarial hearing for a public records request. We apply similar provisions, with appropriate modifications, to the instant case:

*1018 (1) The defendants are to produce all contested documents for an in camera inspection by the trial judge.
(2) The contested documents are to be sealed and maintained as confidential and under strict security, subject to the appropriate appellate court's review.
(3) A representative of the defendants will be allowed to testify as to the identity of each document sought to be withheld, altered, or excised and such representative will set forth with specificity the particular privilege claimed, and the representative will be subject to a meaningful opportunity for cross-examination with respect to each asserted privilege. The identity of the document does not mean that the identity of the record maker or information contained therein must be revealed in order for an effective cross-examination to take place.
(4) The trial court shall make a detailed in camera inspection of each document produced on an item by item basis and determine if they are subject to any statutory privilege or if the privacy concerns outweigh the right to access public documents.
(5) The trial judge shall then provide a written opinion on an item by item basis detailing if the record is entirely confidential or the portion to be excised and the reasons therefor. Once again, the opinion should generally identify the omitted or redacted records, while not disclosing the exempted information, and specifically note the privilege.
CONCLUSION
The judgment denying the production of the contested documents is reversed, and this case is remanded for a contradictory hearing and in camera inspection in conformity with this opinion.
REVERSED AND REMANDED.

ON REHEARING
Before WILLIAMS, STEWART, GASKINS, MOORE and LOLLEY, JJ.
PER CURIAM.
This rehearing application is granted for the limited purpose of assessing costs of this appeal. Pursuant to La. R.S. 13:5112, costs of this appeal in the amount of $237.50 are assessed against the defendants.
NOTES
[1] In its opinion, this court concluded: "Without in any way condoning the wisdom or propriety of Pumphrey's action in approaching Kirkham to discuss her driving, we affirm the trial court's ruling that Kirkham did not sustain her burden of proving that an assault occurred."
[2] According to the defendants' appellate brief, seven of the documents were communications between the police department and Pumphrey's counsel in the Caddo lawsuit. The remaining six documents were (1) the BCPD informal complaint investigation cover sheet; (2) a BCPD informal complaint investigation document containing a summary of the complaint and the investigating officer's opinions; (3) a "supervisory review and return" document containing the opinion of the reviewing officers; (4) two documents called "internal investigation warning" informing Pumphrey of his rights; and (5) a one-page memorandum prepared by the investigating officer, containing summaries of information obtained from the plaintiff, Pumphrey and "a witness," as well as the investigating officer's opinions, findings and recommendations. The tapes are asserted to be two identical tape recordings of the January 15, 1997 interview of Pumphrey by the BCPD internal affairs investigator.
[3] However, in an obvious typographical error, the judgment gives the date as "this 3 day of April, 2002."
[4] Also in La. Atty. Gen. Op. No. 94-216 (7/13/94), the attorney general opined that the law enforcement internal affairs files were public records.
[5] Although Attorney General opinions are merely advisory and not binding, the courts of this State have recognized their persuasive authority. City of New Orleans v. Board of Directors of Louisiana State Museum, XXXX-XXXX (La.3/2/99), 739 So.2d 748; State in Interest of J.M., 97-491 (La.App. 3d Cir.10/29/97), 702 So.2d 994.
[6] We note that the legislature could have included such an exemption in the Public Records Act, but failed to do so. The legislature has enacted specific laws to prohibit disclosure of some records, for example: records in custody of the governor (La. R.S. 44:5), public hospital records (La. R.S. 44:7), and judiciary commission records until filed by the commission with the supreme court (La. R.S. 44:10). See also La. R.S. 44:4.1, which lists a multitude of exceptions. It is within the province of the legislature to enact a wholesale exemption for internal affairs records.