**In re: UNITED STATES**

v.

**John DOE**

**Nos. N04–2294, G.J.2005–2.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 18, 2006.

Jennifer Dominguez, Edward Caspar, Department of Justice, Civil Rights Division—Criminal Section, Washington, DC, for United States.

Christopher Boynton, Senior City Attorney, Office of the City Attorney, Va. Beach, for City of Virginia Beach.

### *ORDER*

DOUMAR, District Judge.

Presently before the Court is a Motion by a City to Quash Subpoena Duces Tecum under Rule 17(c) of the Federal Rules of Criminal Procedure. The City's motion is hereby **GRANTED**.

### I. FACTUAL BACKGROUND

The City was served with a subpoena duces tecum from the United States that requested the production of documents containing statements made by police offi-

cers to what the Court will refer to as the Department's internal affairs office—an investigatory arm within the Department. These statements were obtained as part of the Police Department's internal investigation of what may be the target of a grand jury investigation.

The City contends that the documents contain statements given under conditions of confidentiality and other candid information "indispensable to the objective investigation of police department operations required for command review and action and privileged from disclosure and use for criminal prosecution purposes under applicable law."

The records at issue here belong to the an office akin to an "Internal Affairs" body. The Chief of Police has decreed that every officer, including those subject to internal investigation, must cooperate in internal investigations as a condition of employment. The Chief further decreed that any information can be used in departmental administrative actions, but not in any criminal proceeding. Officers from whom information is requested are advised in writing that the information cannot be used in criminal matters. The City asserts that this compelled information, which is necessary for the administration and management of the Police Department, was given with the express promise that it not be used in a criminal proceeding.

## II. LEGAL STANDARD

### A. Rule 17(c)

 Rule 17(c) of the Federal Rules of Criminal Procedure states that "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Under the Rule, the City has the burden of showing that compliance with the subpoena is unreasonable. The law presumes that a grand jury subpoena is reasonable and the burden of showing

unreasonableness is on the party seeking to avoid compliance. *See United States v. R. Enters., Inc.,* 498 U.S. 292, 301, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). "[T]he challenging party's unenviable task is to seek to persuade the court that the subpoena that has been served on [him or her] could not possibly serve any investigatory purpose that the grand jury could legitimately be pursuing." *Id.* at 300, 111 S.Ct. 722.

In determining the reasonableness of a subpoena duces tecum, a court must take into account "the difficult position of subpoena recipients [without impairing] the strong governmental interests in affording grand juries wide latitude, avoiding minitrials on peripheral matters, and preserving the necessary level of secrecy." *Id.* at 292, 111 S.Ct. 722. As part of the Court's determination of reasonableness, the Court may consider policy concerns, which can include the expectations of confidentiality of those whose records are sought. *See Grand Jury Proceedings: Subpoenas Duces Tecum,* 827 F.2d 301, 306 (8th Cir. 1987); *see also R. Enters., Inc.,* 498 U.S. at 303–306, 111 S.Ct. 722 (Stevens, concurring). The inquiry into the reasonableness of a particular subpoena "cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." *Okla. Press Pub. Co. v. Walling,* 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1946).

### B. Compelled Statements

 "[T]he protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562

(1967). The Fifth Amendment protects against the *use* of compelled statements against the person who made the statement in criminal proceedings. *Garrity,* 385 U.S. at 500, 87 S.Ct. 616. However, it does not protect against the *production* of those statements to a grand jury. *See In re Grand Jury Subpoena (Huntington Beach Police Dept.),* 75 F.3d 446, 447 (9th Cir.1996). "[T]he protection of the Fifth Amendment privilege, when applied to statements made by police officers in internal affairs files, must focus on the use of those statements against the officers who gave them. The statements are not privileged from production to a subpoenaing authority." *Id.*

## III. ANALYSIS

■ Under Rule 17(c), the standard for quashing a subpoena is one of reasonableness. Generally speaking, a grand jury has wide latitude in subpoenaing witnesses and documents. *See R. Enters., Inc.,* 498 U.S. at 297, 111 S.Ct. 722. While the majority opinion in *R. Enterprises, Inc.* focused on reasonableness with respect to the relevance of a subpoena, three Justices concurred with the opinion, writing separately to emphasize that reasonableness can depend on a number of factors. *Id.* at 305–06, 111 S.Ct. 722. As specific examples, the Justices pointed out that burdens in terms of cost, time, and effort, or significant intrusions on privacy interests, trade secrets, or other confidential information can be valid reasons for challenging a subpoena duces tecum. *Id.* While the majority opinion was restricted to the more narrow question of relevancy, the concurring justices asserted, more broadly, that Rule 17(c) "requires the district court to balance the burden of compliance, on the one hand, against the governmental interest in obtaining the documents on the other." *Id.* at 303, 111 S.Ct. 722.

## A. Burden of Compliance v. Interests of the United States

The City argues that it faces two closely-related burdens in complying with the subpoena. First, compliance would undermine its ability to operate the internal affairs office in an efficient and effective manner. Second, the use of these compelled statements would violate the officers' privileges against self-incrimination under the Fifth Amendment. The United States counters these arguments by downplaying the importance of confidentiality in the operation of the internal affairs office, by asserting the importance of the grand jury's role in checking a potentially overzealous prosecutor, and by asserting that, given the complex set of procedures used to handle statements that might run afoul of the Fifth Amendment, it more than adequately addresses the City's concerns about self-incrimination.

The subpoena duces tecum at issue here requests files maintained by the Police Department's internal investigative arm. According to a Police Department order, the internal affairs office is "responsible for maintaining and, where possible, increasing the integrity of the [ ] Department of Police through the full, fair, and objective investigation of allegations of misconduct on the part of members and employees of the department." The purpose of the internal affairs office, in essence, is to enable the Police Department to keep its own house in order. The office has broad investigatory power within the Department. Compliance with its requests for information from police officers is a condition of employment. In return for compliance, police officers are given certain expectations of confidentiality. Before any questioning occurs, a subject is given a form that states, in relevant part, "neither your statements nor any information or evidence that is gained as a result of such

statements can be used against you in any subsequent criminal proceeding. However, these statements may be used against you in subsequent administrative actions."

As part of its investigatory actions, the internal affairs office conducts interviews and collects statements from police officers regarding other officers. Some of these statements may incriminate other officers, and some may be self-incriminating. Quite obviously, the United States is seeking these statements for this very reason—they may provide information that would assist the grand jury in its investigation into the illegal activities of one or more officers.

### 1. Law Enforcement Interest

The "blue wall," as it is popularly known, reflects the propensity for law enforcement officers to refuse to cooperate fully with investigators when a fellow officer is under investigation. *See* Gabriel J. Chin & Scott C. Wells, *The "Blue Wall of Silence" as Evidence of Bias and Motive to Lie: A New Approach to Police Perjury,* 59 U. Pitt. L. Rev. 233, 250 (1998). It has been reported that "[o]fficers who report misconduct are ostracized and harassed; become targets of complaints and even physical threats; and are made to fear that they will be left alone on the streets in a time of crisis." *See Report of the Commission to Investigate Allegations of Police Corruption and the Anti–Corruption Procedures of the Police Department* (July 7, 1994), reprinted in 6 New York City Police Corruption Investigation Commissions, 1894–1994 (Gabriel J. Chin ed., 1997). As a result of the blue wall, it is imperative that internal affairs departments be able to assure officers that their statements will remain confidential. Whether or not these practices exist in the City's Police Department is not at issue here, what is important is that, without expectations of confidentiality, the internal affairs office would be severely hampered in its ability to investigate officers in the Department.

"[I]n the grand jury context the law enforcement interest will almost always prevail." *R. Enters.,* 498 U.S. at 306, 111 S.Ct. 722 (Stevens, concurring). This case is not as simple as a grand jury subpoenaing an alleged law-breaker. Rather, it reflects a tension between two law enforcement interests. On the one hand, the Police Department's internal affairs office is a prophylactic body. The internal affairs office not only investigates misconduct, its existence, powers, and the confidential nature of the information it acquires serves as a deterrent to police misconduct on a regular basis. On the other hand, the grand jury is reactive body, seeking out misconduct. Although a deterrent effect must certainly result from any prosecution, a full-blown grand jury investigation must only be a remote concern compared to the more visible, everyday presence of the internal affairs office.

Aside from asserting the importance of the grand jury's role generally and the wide latitude given to grand juries, the United States argues that the guarantees of confidentiality are overstated because the Police Department's own regulations state that statements may be "discoverable in legal proceedings." (Mot. to Quash, Ex. B, at 14.) Moreover, it asserts that, even though the City does not expressly claim privilege, none would exist even if it had claimed that the expectations of confidentiality created a privilege. To further counter the City's argument that the revelation of this information will hamper the operation of the internal affairs office, the United States cited the secrecy of grand jury proceedings under Federal Rule of Criminal Procedure 6(e)(2).

The Court cannot help but observe that the United States' reliance on Rule 6(e)(2)

is strong in theory, but weak in practice. The common law roots of grand jury secrecy are well-known. At common law, grand jurors were required to swear an oath of secrecy and violation of the oath was both a contempt and a crime. *See* 4 BLACKSTONE, COMMENTARIES 226; *See generally* WIGMORE, EVIDENCE §§ 2360–62. Over time, however, the secrecy surrounding grand juries has transformed from a watertight box into something more akin to a sieve. Only a cursory glance at the sports pages will reveal the extent to which grand jury secrecy failed Barry Bonds in a federal grand jury's investigation of steroid suppliers in professional baseball.

Over time, the courts and Congress have acted to further erode the once sacrosanct secrecy of grand jury proceedings. Cases such as *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), have allowed defendants access to information put before a grand jury, and, more recently, Congress passed the USA PATRIOT Act, which essentially eviscerated grand jury secrecy where the matters involve "foreign intelligence or counterintelligence... or foreign intelligence information." *See* USA PATRIOT Act, Pub.L. No. 107–56, 115 Stat. 272 (2001). This information may now be disclosed to "any federal law enforcement, intelligence, protective, immigration, national defense, or national security official" to assist that person in his or her official duties. *Id.*

While this Court does not seek to pass judgment on the merits of this erosion, it only seeks to recognize that Newton's Third Law, "[f]or every action, there is an equal and opposite reaction," is equally applicable to both law and physics. As the secrecy of the grand jury proceeding erodes, the court's role in supervising such proceedings must also react appropriately.

■ The internal affairs office and the grand jury both serve significant law enforcement interests with respect to the "policing" of the police force, albeit in different ways. Balancing these interests against each other is difficult, but, given the wide latitude traditionally granted to grand juries, the balance will generally fall in favor of the grand jury. In the instant case, however, three closely-related factors give this Court pause, tilting the balance slightly the other way. First, the availability of an exceedingly simple alternative to obtaining this information, subpoenaing the officers directly; second, the risk that, if the motion to quash is denied, the officers' privileges against self-incrimination will be offended; and third, the effect the erosion of secrecy may have on the internal affairs office's ability to police the police.

On the other hand, the grand jury may still perform its important role by obtaining needed information through means which would not affect the operations of the internal affairs office. Balancing these factors, and how they affect the two law enforcement interests represented in this matter, the Court concludes that the law enforcement interests of the City outweigh those of the federal government.

2. Fifth Amendment Privilege Against Self–Incrimination

The City further argues that the subpoena is unreasonable because of the risk that the use of these statements would violate officers' Fifth Amendment right against self-incrimination.[1] It is clear that

---

1. While initially raising questions as to the City's standing to assert the Fifth Amendment rights of the officers affected by the subpoena, the United States informed the Court during oral argument that it conceded that the City could argue on behalf of the police officers in question.

any statements made to the internal affairs office by an officer cannot be used against that officer in criminal proceedings—making a statement under the threat of losing one's job is compelled testimony. *See Garrity*, 385 U.S. at 500, 87 S.Ct. 616. In such an investigation, however, the Court is concerned that the number of statements potentially available may significantly affect the Fifth Amendment rights of a large number of officers.

To allay the Court's concerns about the Fifth Amendment, the United States describes how it will use a *"Garrity* Review Team" to review the documents. This team utilizes complex screening techniques and procedures to ensure that no information derived from compelled statements of the subjects of the grand jury investigation will be reviewed by the prosecutor or presented to the grand jury. All of the attorneys and law enforcement agents involved in the investigation will be insulated from documents containing compelled statements made by the subjects of the investigation. The documents will be appropriately redacted before being given to the investigatory team. Any summaries of conclusions based on such statements will be similarly redacted. The members of the review team will be barred from participation in any investigation or prosecution arising from the allegations. The redacted material will never be seen by the investigators or prosecutors. These procedures have been utilized and approved by other courts in the past. *See In re Grand Jury Subpoenas (Albuquerque Police Dept.)*, 40 F.3d 1096, 1103 (10th Cir.1994); *In re Grand Jury Subpoena (Huntington Beach Police Dept.)*, 75 F.3d at 448.

Finally, the United States asserts that an officer who has been compelled to provide a statement and is later indicted would be entitled to a hearing at which the government would have to prove that the evidence it proposes to use was derived from a source wholly independent of the officer's compelled testimony. *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Because the Fifth Amendment only protects against "real dangers, not remote and speculative possibilities," *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 478, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972), this post-indictment hearing provides the defendant with an appropriate opportunity to attack suspect evidence in a concrete situation.

While these extremely complex procedures appear to adequately protect the officers' privilege against self-incrimination, the Court cannot overlook the fact that complex procedures often lead to even more complex problems. The United States and the grand jury have a fool-proof method of getting substantially similar, and possibly even better, evidence simply by subpoenaing the officers directly. By subpoenaing the officers themselves, they will be able to testify or invoke their privilege against self-incrimination as they see fit. Rather than using a complex system of screening teams and redacted statements, this will virtually eliminate any risk that a *Garrity* statement may be improperly used against an officer.

## III. CONCLUSION

The argument put forward by the United States rests largely on absolutist terms. That is, it asserts that the information must be produced at the time and in the manner in which they request it. Rule 17(c), however, is not couched in absolutist terms, it is based on reasonableness. Taking this into account, even if it is true that the grand jury has wide latitude in investigating matters, that the Police Department's regulations provide for the possibility that statements may be discoverable, that there is no privilege with respect to

these statements, and that complex screening procedures can adequately address potential Fifth Amendment problems, the standard is not whether the grand jury may eventually be able to obtain these statements, it is whether it is reasonable to obtain them at this stage in the investigation. Given the importance of the effective and efficient operation of the City's internal affairs office and the relative ease with which the grand jury may avoid hampering that effectiveness and efficiency by subpoenaing witnesses directly, the City's Motion is hereby **GRANTED**, and the subpoena duces tecum is hereby **QUASHED**.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**