KUHN, J.
 

 lain this appeal, we consider whether the trial court erred in concluding that Internal Affairs Division (“IAD”) files of the Baton Rouge Police Department (“the BRPD”), be deemed confidential under La. R.S. 40:2532 and not subject to disclosure under the Public Records Act, La. R.S. 44:1
 
 et seq.
 

 [1]
 

 Finding that the police officers under investigation had no individual privacy interest in these files and recognizing a strong public interest in disclosure, we find the trial court erred in not order
 
 *810
 
 ing disclosure of the records after the redaction of certain protected information, as later directed in this opinion. We hereby issue a writ of mandamus directing the BRPD and the East Baton Rouge Parish Metropolitan Council (“the Metropolitan Council”) to make available to Capital City Press, L.L.C. d/b/a/ The Advocate (“Capital City Press”) a redacted copy of the IAD files within ten days of the finality of this opinion. Accordingly, we reverse the trial court’s judgment and remand for a determination of the amount of attorneys’ fees and litigation costs due to Capital City Press.
 

 I. PROCEDURAL AND FACTUAL BACKGROUND
 

 In the aftermath of Hurricane Katrina, when Baton Rouge, Louisiana, was inundated with storm evacuees, law enforcement officers from several other states came to Baton Rouge to assist the BRPD in their law enforcement efforts. Soon after the out-of-state officers began patrolling with the BRPD officers, some of the out-of-state officers made complaints about misconduct on the part of certain BRPD officers. The result was that the out-of-state officers withdrew their law enforcement assistance, and the BRPD conducted an IAD investigation regarding these allegations of misconduct.
 

 |4By letter dated May 18, 2006, Kimberly Vetter, a reporter for “The Advocate” newspaper, made a request pursuant to the Public Records Act, to Kim Brooks, the legal advisor to the BRPD, seeking information regarding the IAD investigation. Specifically, Vetter sought to review the following:
 

 Records and reports that comprise the internal investigation of the five [BRPD] officers who were disciplined in January in relation to allegations of brutality and excessive force made by New Mexico State Police and Michigan State Police.
 

 On June 6, 2006, Brooks denied Vetter’s request, urging the IAD records did not fall within the purview of the Public Records Act. In a June 21, 2006 letter, Lloyd Lunceford, counsel for Capital City Press made a more detailed request, which itemized the type of documents that might be encompassed within Capital City Press’s request for “records and reports.”
 
 [2]
 

 IsOn July 5, 2006, the City of Baton Rouge/Parish of East Baton Rouge (“the City-Parish”) filed a petition for a declaratory judgment regarding the request, seeking a declaration as to whether the
 
 *811
 
 records sought by Capital City Press were subject to disclosure under the law.
 
 [3]
 
 The City-Parish asserted that it wished to provide all documents required to be disclosed by law so as to foster continued public confidence in the BRPD, but it did not want to be liable for invasion of the privacy rights of any persons affected by the disclosure. The City-Parish sought an “in camera” review by the trial court to assess and balance the privacy rights to be affected versus the public’s right to access and to determine whether the records must be disclosed in their entirety, in part, or not at all.
 

 On the same date, Capital City Press filed suit against the BRPD and the Metropolitan Council,
 
 [4]
 
 asserting Capital City Press was entitled to access of the requested public documents under the Public Records Act.
 
 [5]
 
 Capital City Press sought a writ of injunction enjoining the BRPD and the Metropolitan Council from withholding the records sought or, alternatively, a writ of mandamus ordering the production of the records sought. Capital City Press also sought costs, attorneys’ fees, damages, and civil penalties.
 
 [6]
 

 lfiAlong with the petitions in each suit, the parties filed joint motions, which were granted, to have the individual suits consolidated since they involved common issues of law and fact.
 
 [7]
 

 After the suits were filed, the BRPD released two letters captioned “Interdepartmental Correspondence,” which addressed discipline that had been imposed by the BRPD with respect to two of the officers involved in the IAD’s investigation. One was a December 20, 2005 letter from Chief C. Jeffrey LeDuff to Corporal Cleveland Thomas, advising him that he had been suspended for three days. The suspension resulted from the IAD’s investigation of a complaint filed by New Mexico State Police representatives regarding Corporal Thomas’ involvement in a September 10, 2005 incident while on duty. The other was a January 12, 2006 letter from Chief LeDuff to Officer Robert Rachal, advising that the letter was “to serve as a reprimand.” The reprimand resulted from the IAD’s investigation of a complaint filed by Michigan State Police representatives regarding Officer Rachal’s involvement in a September 10, 2005 incident while on duty.
 
 [8]
 

 
 *812
 
 Following the release of these two letters, Lunceford informed Brooks in a July 7, 2006 letter that Capital City Press continued to seek further disclosure. This letter stated in part, as follows:
 

 [Capital City Press] has sought, and is seeking again by this letter, disclosure of all records and reports that comprise the internal investigation of all five [BRPD] officers against whom allegations of brutality and excessive force were made by the New Mexico State Police and Michigan State Police— whether those complaints resulted in “disciplinary action” as the BRPD apparently defines that term or resulted in some alternative disposition involving a lesser requirement or sanction, including but not limited to BRPD-ordered counseling.
 

 |7In a reply letter dated July 12, 2006, Brooks responded, in pertinent part:
 

 I am in receipt of your continued demand for the three remaining “disciplinary files.” Once again, the [BRPD] did not discipline anyone other than the two officers whose letters have already been provided. The three remaining officers were referred for verbal supervisory counseling. There is no written documentation of that activity. This action was taken because the complaints referring to these officers were not sustained after investigation.
 

 One day later, Lunceford answered, in relevant part:
 

 [M]y most recent letter made clear that my client’s request is not limited to “discipline” as that term is apparently defined by the BRPD. The records requested include
 
 any
 
 document relating to the complaints made, investigations undertaken and findings reached concerning the three individuals who ultimately were ordered to undergo “supervisory counseling.”
 

 [[Image here]]
 

 You also state that the counseling was ordered by the BRPD because the complaints “were not sustained.” However, the investigations of the affected officers must not have resulted in complete exoneration. Obviously some deficiency of some sort must have been deemed present to warrant corrective action such as an order to undergo supervisory counseling.
 

 ... [I]t is apparent that no additional information will be volunteered — hence the hearing [in the trial court]....
 

 Before the matter was heard by the trial court, an intervention was filed by the Baton Rouge Union of Police, Local # 237, AFL-CIO (“Local # 237”); Chris Stewart, a BRPD officer, appearing individually and as a representative of Local # 237; Joseph Bourgeois, a BRPD officer, appearing individually and as the district representative of the International Union of Police Associations, AFL-CIO; John Doe #1, #2, and # 3, BRPD officers whose rights and reputations are directly involved in the instant litigation; and Chris Nassif, an Alexandria police officer, who is the president of the Louisiana Union of Police Associations (collectively referred to as “In-tervenors”). The Intervenors prayed for an order permitting their intervention, which was granted by the | Rtrial court, and a judgment in favor of the City-Parish and the BRPD, granting those parties’ requested relief and denying the relief sought by Capital City Press and Vetter.
 

 During an August 2006 hearing on the parties’ petitions, the trial court accepted the documents in question for an in-camera inspection and heard the testimony of several witnesses, including Patrick J. Yoes, captain of the Special Services Division of the St. Charles Parish Sheriff Department and president of the Louisiana
 
 *813
 
 Fraternal Order of Police and secretary of the Fraternal Order of Police. He opined that IAD records should be held confidential because officer statements are given under “the
 
 Garrity
 
 Rule,” requiring the officer to provide a statement or, otherwise, he is immediately dismissed from the BRPD.
 
 [9]
 
 He also believed that the release of IAD statements could injure law enforcement officers, cause embarrassment, and hinder relations with other co-workers.
 

 Chief LeDuff testified that the BRPD released the final disposition documents that pertained to two of the five officers that had committed policy violations and had been disciplined. He maintained that the others had not been found guilty of any policy violations and had not been disciplined. He determined they “needed to be spoken to for little things, such as the way you speak to someone ... for the tone of your voice.... ” Chief LeDuff acknowledged that supervisory counseling was ordered for three of the five officers involved in the IAD investigation. He stated, “Coaching and counseling is part of what we do every day, and that was the recommendation to my uniform patrol commander” as to the other three. Chief LeDuff testified that if an | Oofficer had not been disciplined at the end of the IAD investigation, he did not disclose the information regarding the investigation.
 

 Chief LeDuff testified that the officers signed a
 
 Garrity
 
 declaration rights supplement form as part of the IAD investigative process.
 
 [10]
 
 Participation in the IAD’s investigative process was a condition of the police officer’s employment, and he believed that publicizing the IAD records would be very detrimental to the BRPD. When an IAD investigation ends, Chief LeDuff makes a determination regarding whether the case is sustained or not. If a case is not sustained, Chief LeDuff testi
 
 *814
 
 fied that
 
 the officer is
 
 notified, but there is no reason to otherwise disclose the circumstances of the investigation.
 
 [11]
 
 Chief Le-Duff stated that, based on the applicable statute addressing release of information to the news media, La. R.S. 40:2532, he is the individual that deems what information is confidential and, therefore, exempt from release.
 

 110Lieutenant Daryl Rice, commander of the IAD, testified that the files are maintained in a pristine, confidential manner and are viewed only by him, his staff, the chief of police, and the pre-disciplinary council; the files are not disseminated throughout the BRPD. The files are only released if the chief orders it. He explained that in every case, the complainants ask that the records be kept confidential. Also, the officer under investigation is apprised that the investigation will be confidential. He opined that if the confidentiality feature of IAD investigations was removed, it would have a crippling and devastating effect on the BRPD. He further stated that where a complaint arises internally, the lack of confidentiality would discourage cooperation on the part of the officers.
 

 Lieutenant Rice described the following four classifications for concluding how an investigation might be concluded: 1) “sustained” means there is sufficient evidence to support a finding that the officer violated a policy; 2) “not sustained” means the IAD was unable to prove it occurred; 3) “exonerated” means no possible basis for the complaint; and 4) “unfounded” means the complaint is without merit, i.e., the IAD is able to prove beyond a reasonable doubt that the event did not happen.
 

 Sergeant Donald Paul Kelly worked in and was in charge of the Media Relations Division of the BRPD since 1988, with the exception of a one year interruption. He had the responsibility of complying with the Public Records Act and responding to the media requests for records pertaining to criminal and IAD investigations and administrative issues. He testified that he had been advised by Brooks regarding the law, and that the BRPD’s policy, under several different chiefs, has been consistent for llover twenty years; to the best of Sergeant Kelly’s recollection, the BRPD had never released IAD files during his tenure.
 
 [12]
 

 Greg Phares, who served as the BRPD chief from 1991 to 2001, testified that the IAD reported directly to the chief. He also stated that whether IAD records are released to the media is a decision left to the chief, within the parameters of the public records law. He also stated he would be concerned about a statute or a policy that gave the chief the total authority to decide whether items were sealed. He further stated that while he was chief, it was not his policy that IAD records would never be disclosed, but he stated that the requests would be processed within the parameters of the law.
 

 Linda Lightfoot, the executive editor of The Advocate, testified that The Advocate made the public records request in the instant case because the credibility of the police department is of utmost interest to the public. She opined that the police
 
 *815
 
 function is the most important function that local government performs. She also stated that the most important function of the newspaper is to monitor the affairs of local government and to present information to readers as to whether the police department is being operated as it should be.
 

 In written reasons for judgment, dated January 17, 2007, the trial court stated, in pertinent part:
 

 [T]his Court finds particularly helpful the testimony of the BRPD officials who testified at the hearing. By their own words, it is clear that, in order for internal affairs investigations to be fruitful, officers must be candid in the giving of statements. The best way to facilitate such candor is to ensure the confidentiality of those proceedings. Therefore, inasmuch as the functionality of the internal affairs division is crucial to maintaining a police force, this Court finds that society is prepared to recognize a reasonable expectation of privacy in internal affairs records.
 

 | ]2Having found that the police officers in the foregoing matter do have a reasonable expectation of privacy in the records of the internal affairs investigation, this Court “must weigh ... the public records disclosure interest against the privacy interest.”....
 

 Pursuant to La. R.S. 44:35(B) ..., this Court exercised its right to ... “view the documents in controversy in camera before reaching a decision,”.... After examining the documents contained within the internal affairs file and weighing the officers’ privacy interests against those of public disclosure, this Court is of the opinion that the documentation contained in the internal affairs files at issue in these proceedings is properly considered confidential information with regard to those officers named therein. In so holding, this Court is influenced by the fact that the conduct at issue in the internal affairs investigation was not of such a serious or heinous nature so as to require serious discipline. Because the conduct at issue was not egregious, the officers’ reasonable privacy interests are not outweighed by the public’s right to know. Accordingly, the BRPD had discretion pursuant to the exception found in La. R.S. 40:2532 not to disclose the internal affairs files pursuant to The Advocate’s public records request.
 

 The public is well served by the establishment of an internal affairs division that operates as a watchdog for police misconduct. As a matter of public policy, there is a crucial need for full cooperation by all police employees during the process of an internal affairs investigation. Without the promise of confidentiality in those proceedings, officers would be less likely to fully participate, which could cause investigations to be jeopardized....
 

 For the foregoing reasons, this Court finds that the information sought by The Advocate pursuant to its public records request is deemed confidential under La. R.S. 40:2532, and, therefore, would not be subject to disclosure under the Public Records Act....
 

 [Citation omitted.]
 

 The trial court signed a February 7, 2007 judgment in favor of the City-Parish and the Intervenors, holding that the IAD records requested by Capital City Press are confidential under La. R.S. 40:2532 and therefore are not subject to disclosure under the Public Records Act. The judgment also denied Capital City Press’s request for an injunction or alternative mandamus
 
 *816
 
 relief.
 
 [13]
 

 1 <sCapitaI City Press has appealed and assigns the following errors:
 

 1) The trial court erred in applying La. R.S. 40:2532 as an exemption to the Public Records Act (La. R.S. 44:4.1B(24)) to police internal affairs files when those [IAD] investigations had concluded.
 

 2) If La. R.S. 40:2532 is applicable to concluded internal affairs investigations, the trial court erred in liberally interpreting that exemption by setting “seriousness” as the only guideline for police chiefs to follow when determining which information should be deemed “otherwise confidential.”
 

 3) The trial court erred in finding that the target police officers had a reasonable expectation of privacy even after the conclusion of an internal affairs investigation when the charges were found to have merit and the officers were disciplined and when no other statutory exemptions from disclosure applied.
 

 4) If the target officers have a reasonable (constitutionally-protected) expectation of privacy under the preceding circumstances, the trial court erred in finding that such privacy interest outweighed the public’s competing constitutionally-protected right of access to public records.
 

 [Record references omitted.]
 

 II. ANALYSIS
 

 In order to determine whether the IAD records were lawfully withheld by the BRPD, we must interpret La. R.S. 40:2532 and determine its interplay with Louisiana’s constitutional right of access to public documents and the constitutional right of privacy. Thus, we review the legal issues presented
 
 de novo. See Henderson v. Bigelow,
 
 07-1441, p. 8 (LaApp. 4th Cir.4/9/08), 982 So.2d 941, 946,
 
 writ denied,,
 
 08-1025 (La.6/27/08), 983 So.2d 1292.
 

 Article XII,' Section 3 of the Louisiana Constitution provides that no person shall be denied the right to examine public documents, except in cases established by law. The legislature has codified this right in the Public Records Act (“Act”), La. R.S. 44:1
 
 et seq.
 
 In the instant case, it is undisputed that the BRPD and the Metropolitan Council 114are each a “public body,” subject to the Public Records Act, as that term is defined in La. R.S. 44:1 A(l).
 
 [14]
 
 Additionally, it is undisputed that the IAD records sought by Capital City Press are “public records” as that term is defined in La. R.S. 44:1 A(2).
 
 [15]
 

 
 *817
 
 Louisiana Revised Statutes 44:31 states, in pertinent part:
 

 A. Providing access to public records is a responsibility and duty of the ... elective office of a custodian and his employees.
 

 B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
 

 (3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.
 

 As with the constitutional provision, the Public Records Act should be construed liberally, and any doubt must be resolved in favor of the right of access.
 
 Angelo Iafrate Count, L.L.C.,
 
 03-0892 at p. 13 (La.App. 1st Cir.5/14/04), 879 So.2d 250, 260,
 
 unit denied,
 
 04-1442 (La.9/24/04), 882 So.2d 1131
 
 (citing Landis v. Moreau,
 
 00-1157, p. 4 (La.2/21/01), 779 So.2d 691, 694-95). The purpose of the Act is to keep the public reasonably informed about how public bodies conduct their business and how the 11Saffairs of government are handled.
 
 Angelo Iafrate Const., L.L.C.,
 
 03-0892 at p. 13, 879 So.2d at 260. Louisiana Revised Statutes 44:32 B recognizes that portions of the requested material may be nonpublic records and allows the custodian the option to separate that portion from the requested material.
 
 Id.,
 
 03-0892 at p. 4, 879 So.2d at 254. Under La. R.S. 44:35 A, any person who has been denied the right to inspect or copy a record may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief together with attorneys’ fees, costs, and damages.
 
 Id.,
 
 03-0892 at p. 5, 879 So.2d at 254.
 

 Because the right of access to public records is a fundamental right, guaranteed by the constitution, access may be denied only when the law specifically and unequivocally denies access.
 
 Capital City Press v. East Baton Rouge Parish Metropolitan Council,
 
 96-1979, p. 4 (La.7/1/97), 696 So.2d 562, 564 (quoting
 
 Title Research Corp. v. Rausch,
 
 450 So.2d 933, 936 (La.1984)). All exceptions, exemptions, and limitations to the laws pertaining to public records and their disclosure pursuant to the Public Records Act must be provided for in the Act or in the Louisiana Constitution.
 
 Angelo Iafrate Const., L.L.C.,
 
 03-0892 at p. 4, 879 So.2d at 254;
 
 see
 
 La. R.S. 44:4.1. Any exemption to the Act is in derogation of the public’s right to be reasonably informed and must be narrowly interpreted.
 
 Angelo Iafrate Const., L.L.C.,
 
 03-0892 at p. 5, 879 So.2d at 254.
 

 The exemption at the heart of the controversy in this case is found in La. R.S. 40:2532 and is listed in the Act as an exception, exemption, or limitation recognized by 11(iour legislature.
 
 [16]
 

 See
 
 La. R.S.
 
 *818
 
 44:4.1 B(24). Louisiana Revised Statutes 40:2532 provides:
 

 No person, agency, or department shall release to the news media, press or any other public information agency, a law enforcement officer’s home address, photograph, or any information that may be deemed otherwise confidential, without the express written consent of the law enforcement officer, with respect to an investigation of the law enforcement officer. [Emphasis added.]
 

 The individual officers involved in this case have not given their consent to the release of any of the IAD records. The City-Parish, the BRPD, and the Intervenors assert this statute exempts from the Act all of the IAD records in contention based on Chief LeDuffs classification of these records as confidential.
 

 Capital City Press urges that the exemption addressed in La. R.S. 40:2532 is inapplicable once the IAD investigation has concluded and the allegations are found to have merit. Capital City Press urges, “After an investigation has concluded, other provisions of law may permit some limited, appropriate redaction (for HIPAA-related health information, unlisted phone numbers, Social Security numbers,
 
 etc.),
 
 but R.S. 40:2531,
 
 et seq.
 
 no longer applies to cover the entirety of an [IAD] file.” Further, Capital City Press contends the police officers’ conduct has preempted their rights to assert a privacy interest. Capital City Press also asserts that “[a]ny subjective expectation of privacy that a police officer
 
 (i.e.
 
 a public employee) may have is no longer reasonable when the investigation of his conduct has been concluded, no exoneration has resulted and discipline ... has been imposed, and no pending criminal 117litigation is pending against him.”
 

 Alternatively, Capital City Press contends that if La. R.S. 40:2532 applies to concluded IAD investigations, it should not be liberally interpreted to give a police chief virtually unfettered discretion to decide which information is “otherwise confidential.” Capital City Press concedes that information specifically exempted by La. R.S. 40:2532 should be deleted prior to release of the records, but that the entirety of the IAD records should not be deemed confidential.
 

 In addition to urging La. R.S. 40:2532 as a basis for denying access to the IAD records, the City-Parish, the BRPD, and the Intervenors argue disclosure of the records would be an invasion of the police officers’ right to privacy under Article I, Section 5 of the Louisiana Constitution. This provision states, in pertinent part:
 

 Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.
 

 In
 
 Angelo Iafrate Const., L.L.C.,
 
 this court found that the employees of a highway construction contractor, who were working on a federally-funded state highway construction project, had a subjective expectation of privacy in their personal, particularized wage information that outweighed any public interest there might be in disclosure of that information to a union that had requested the information.
 
 See Id.,
 
 03-0892 at p. 13, 879 So.2d at 260. In addressing the constitutional right to privacy, this court set forth the following pertinent discussion:
 

 
 *819
 
 The right to privacy in Louisiana has been described as the right to be let alone and to be free from unnecessary public scrutiny. The right to privacy protects varied interests from invasion. Among the interests protected is the individual’s right to be free from unreasonable intrusion into his seclusion, solitude, or private affairs. The right is not absolute; it is qualified by the rights of others. The right to privacy is also limited by society’s right to be informed about legitimate subjects of public interest.
 

 | ,8In ascertaining whether individuals have a reasonable expectation of privacy that is constitutionally protected, a court must determine not only whether the individual has an actual or subjective expectation of privacy, but whether that expectation is also of a type which society at large is prepared to recognize as being reasonable. When a request for public records is at issue, the custodian or the individual claiming the privacy right must prove that there is a reasonable expectation of privacy against disclosure of the information to a person entitled to access to the public information. If, and only if, a reasonable expectation of privacy is found, the court must weigh or balance the public records disclosure interest against the privacy interest. [Citations omitted.]
 

 Id.,
 
 03-0892 at pp. 5-6, 879 So.2d at 255.
 

 This reasonable expectation of privacy is embodied in La. R.S. 40:2532.
 
 Skamangas v. Stockton,
 
 37,996, p. 8 (La.App. 2d Cir.3/5/04), 867 So.2d 1009, 1014,
 
 units denied,
 
 04-1099 and 04-1125 (La.6/25/04), 876 So.2d 839 and 843.
 

 Arguably, the BRPD, particularly the chief of police, has considerable discretion under La. R.S. 40:2532 to determine what confidential information should be deleted from records prior to disclosure.
 
 See Skamangas,
 
 37,996 at p. 10, 867 So.2d at 1015. However, because exemptions to the Public Records Act are to be narrowly construed, we do not interpret this provision as a blanket exemption from disclosure of IAD files.
 
 Id.,
 
 37,996 at p. 14, 867 So.2d at 1017. The legislature could have included such an express exemption in the Public Records Act but has failed to do so.
 
 Skamangas,
 
 37,996 at p. 14 n. 6, 867 So.2d at 1017 n. 6. To support a finding that certain information is confidential, there must be a basis for claiming a privacy right. To determine whether such a basis exists, it is necessary to analyze the individual records on a case-by-case basis. Where constitutional rights are in conflict, the court must weigh the competing rights to determine which prevails, and this analysis, which is dependent upon the particular facts and circumstances involved, must be made on a case-by-case basis.
 
 See Broderick v. State, Dept. of Environ. Quality,
 
 00-0156 (La. |App-ia 1st Cir.5/12/00), 761 So.2d 713, 715,
 
 unit denied,
 
 00-1714 (La.9/15/00), 768 So.2d 1284. The “public interest in disclosure and nondisclosure [of police IAD records] may vary depending on the circumstances of an investigation, and the nature of the documents produced.”
 
 Bolm v. Custodian of Records of Tucson Police Dept.,
 
 193 Ariz. 35, 969 P.2d 200, 283 Ariz. Adv. Rep. 13 (App.1998).
 

 The City-Parish, the BRPD, and the Intervenors argue that in consideration for their mandatory compliance in an IAD investigation, officers are promised confidentiality.
 
 [17]
 
 They assert the IAD procedure
 
 *820
 
 fosters the public’s trust and confidence in the integrity of the police department and the need for forthright information from the officers justifies maintaining the confidentiality of the IAD records.
 

 These parties have also raised the “blue wall” as justification for maintaining the confidentiality of the IAD records. In
 
 U.S. v. Doe,
 
 434 F.Supp.2d 377, 380 (E.D.Va.2006), the court addressed the “blue wall” in determining whether to enforce the United States’ subpoena
 
 duces tecum,
 
 requiring the production of documents containing statements made by police officers to the City of Virginia Beach police department’s internal affairs office:
 
 [18]
 

 The “blue wall,” as it is popularly known, reflects the propensity for law enforcement officers to refuse to cooperate fully with investigators when a fellow officer is under investigation.... It has been reported that “[ojfficers who report misconduct are ostracized and harassed; become targets of complaints and even physical threats; and are made to fear that lanfbey will be left alone on the streets in a time of crisis.” [Citations omitted.]
 

 Capital City Press counters it is implausible that society as a whole would recognize a target officer’s subjective expectation of privacy as being objectively reasonable under the circumstances presented, i.e., when the investigation has concluded without the officers being fully “exonerated,” and no criminal litigation is pending. Here, Capital City Press urges that it only seeks disclosure of IAD files for investigations where the IAD charges were either “sustained” or “not sustained.” Capital City Press maintains that the IAD records should be disclosed, urging that the public’s right to know how the BRPD polices itself outweighs the individual public employee’s right to privacy.
 

 An invasion of privacy can occur by the unreasonable public disclosure of embarrassing private facts.
 
 Jaubert v. Crowley Post-Signal, Inc.,
 
 375 So.2d 1386, 1388 (La.1979). In
 
 Brodeñck,
 
 00-0156 at p. 5, 761 So.2d at 715, this court found a reasonable expectation of privacy in the content of employee grievance records, based upon the trial court’s inspection of the files and a finding that the information contained therein had the potential to cause embarrassment to various individuals due to them private nature. The court in
 
 Broder-ick
 
 concluded that the plaintiff failed to show any public interest that could be met by the disclosure that would outweigh the privacy interest of the individual employee. In
 
 Capital City Press,
 
 96-1979 at p. 10, 696 So.2d at 567, however, the supreme court held that applicants for public employment generally have no right of privacy in them resume or application for public employment. But in so holding, the court also set forth a situation where a privacy interest might be recognized, stating that “[i]f a resume or application contains facts which would expose [21 the applicant to public disgrace, are clearly private in nature,
 
 *821
 
 or are protected by law from disclosure, then that resume or application, or the private matters contained therein, may not be disclosable depending on the circumstances.”
 
 Id.
 

 Addressing the IAD records at issue, we do not find any legitimate reasonable expectations of privacy on behalf of any of the police officers who were investigated. These investigations were not related to private facts; the investigations concerned public employees’ alleged improper activities in, the workplace.
 
 [19]
 
 On the other hand, the public has a strong, legitimate interest in disclosure. One of the purposes of the Public Records Act is to insure that public business is subject to public scrutiny.
 
 Henderson v. Bigelow,
 
 07-1441 at p. 11, 982 So.2d at 948. The public has an interest in learning about the operations of a public agency, the work-related conduct of public employees, in gaining information to evaluate the expenditure of public funds, and in having information openly available to them so that they can be confident in the operation of their government. The public should be ensured that “both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects is open to public scrutiny.”
 
 Fincher v. State,
 
 231 GaApp. 49, 52-53, 497 S.E.2d 632, 636 (1998) (quoting
 
 Irvin v. Macon Tel. Publishing Co.,
 
 253 Ga. 43, 45(3), 316 S.E.2d 449 (1984)). It would be an 122incongruous result to shield from the light of public scrutiny the workings and determinations of a process whose main purpose is to inspire public confidence.
 
 See Worcester Telegram, & Gazette Corp. v. Chief of Police of Worcester,
 
 58 Mass.App.Ct. 1, 787 N.E.2d 602, 31 Media L. Rep. 1689 (5/1/03),
 
 review denied,,
 
 440 Mass. 1103, 795 N.E.2d 574 (2003).
 

 The BRPD, the Metropolitan Council, and the Intervenors rely on the “blue wall” and “code of silence” arguments, contending that disclosure of the records might have a chilling effect on the reporting of violations. These arguments assume, however, that the BRPD officers themselves are currently a significant source of complaints against other BRPD officers, but the record in this case contains no support for such an assertion; the complaints in this case arose from police officers from other states.
 

 Accordingly, we find that the BRPD, the Metropolitan Council, and the Intervenors have not established that the entirety of the IAD records at issue is exempted from disclosure by the Public Records Act. We conclude, however, that the following information contained in the
 
 *822
 
 IAD files was properly deemed confidential pursuant to La. R.S. 40:2532: 1) personal information relative to the names, addresses, and identifying information of alleged victims, witnesses, and complainants, including the names of police officers who are complainants; 2) photographs of police officers or others; 3) any home addresses, home telephone numbers, social security numbers, and drivers’ license numbers; and 4) any medical information. Further, records pertaining to pending or reasonably anticipated criminal litigation or arrest records that have not resulted in a final judgment of conviction are expressly exempt pursuant to La. R.S. 12344:3 A(l) and (4)(a).
 
 [20]
 
 Also, records pertaining to status offenders,
 
 see
 
 La. R.S. 44:3 A(6), and official driving records are protected public records.
 
 See
 
 La. R.S. 44:3 G; La. R.S. 15:521 C. Accordingly, we find it is necessary for the IAD records to be redacted prior to their release. La. R.S. 44:32 B. Redaction will afford the public access to these records and to the details of the IAD investigations, while simultaneously safeguarding unsuspecting persons’ reasonable rights to privacy and avoiding needless subjection to serious embarrassment and possible harm. We recognize a strong governmental interest in encouraging victims and witnesses to make reports of misconduct and to participate in IAD investigations.
 
 See Haber v. Evans,
 
 268 F.Supp.2d 507, 512-14 (E.D.Pa.2003).
 

 III. CONCLUSION
 

 The records of the IAD investigations are public within the meaning of the Public Records Act, and La. R.S. 40:2532 does not provide an exemption to the disclosure of portions of the public information sought herein. Therefore, in accordance with La. R.S. 44:35, we issue a writ of mandamus directing the BRPD and the Metropolitan Council within ten days of the finality of this opinion to make available to Capital City Press for inspection and copying, after appropriate redaction in accordance with this | ^opinion, a redacted copy of the IAD files. Because we have concluded that the IAD files are subject to disclosure in redacted form, we reverse the trial court’s judgment, which found them not subject to disclosure and denied Capital City Press’s request for an injunction or mandamus relief. We remand this matter for a determination of the amount of attorneys’ fees due to Capital City Press.
 

 Since Capital City Press has prevailed at least in part in this suit, we find it is entitled to an award of reasonable attorneys’ fees and other costs of litigation under La. R.S. 44:35(D).
 
 [21]
 
 However, the rec
 
 *823
 
 ord does not contain sufficient evidence to allow us to fix these fees. Accordingly, we must remand the case to the district court for presentation of evidence on this issue and a determination of the appropriate amount of attorneys’ fees and costs that Capital City Press should recover.
 
 See Dutton v. Guste,
 
 395 So.2d 683, 686 (La. 1981).
 

 Although the BRPD and the Metropolitan Council made an overly broad interpretation of La. R.S. 40:2532 in supporting their position of non-disclosure, we find no evidence that either the BRPD or the Metropolitan Council were arbitrary, capricious, or unreasonable in failing to disclose the requested information. Thus, we find no basis to support an award of damages or civil penalties in favor of Capital City Press.
 

 Appeal costs are assessed against the BRPD and the Metropolitan Council in the amount of $1,312.81.
 

 WRIT OF MANDAMUS ISSUED; REVERSED AND REMANDED.
 

 DOWNING, J., dissents and assigns reasons.
 

 DOWNING, J., dissents and assigns reasons.
 

 liWe say the police chief has much discretion. Enter discretion, exit mandamus.
 

 Should an injunction be granted? We recognize that the police chief has “considerable discretion.” The trial court in excellent, detailed, incisive written reasons reviewed all the factors and found no abuse of discretion. The majority recites the same factors and substitutes its opinion for the opinion of the police chief and the trial judge. This is not our function. I would affirm the sagacious trial judge.
 

 [1]
 

 . The IAD is a division of the BRPD that has the primary supervisory responsibility for the review and investigation of all complaints against officers, whether initiated by a citizen or the BRPD. BRPD General Order No. 112, Discipline, IV(A).
 

 [2]
 

 . The letter clarified that such "records and reports” may include, but are not limited to:
 

 a) written complaints submitted by any complainants;
 

 b) written statements by complainants or witnesses;
 

 c) written reports or summaries of the complaints or witness accounts prepared by BRPD personnel based on oral statements by complainant or witnesses;
 

 d) any correspondence and e-mail, both within the BRPD or between the BRPD and anyone else, including but not limited to employees or agents of the New Mexico State Police, Michigan State Police or witnesses;
 

 e) interview transcripts;
 

 f) interview tape recordings;
 

 g) notice of hearings;
 

 h) transcripts of bearings;
 

 i) BRPD memoranda or other analyses evaluating or assessing any complaints;
 

 j) written evaluations, reports, conclusions, memoranda or findings prepared by any review or hearing panel, officer, or agent following conclusion of any hearings or the conclusion of any internal investigation relating to this matter
 

 k) reports on or concerning stun gun memory chips;
 

 l) automated police cruiser tracking records;
 

 m) evidence reports;
 

 n) final letters of reprimand or other documents setting forth any recommendations, discipline, or sanction imposed.
 

 [3]
 

 . The City-Parish’s petition was filed in the Nineteenth Judicial District Court for the Parish of East Baton Rouge and was assigned suit number 544,896, Sec. 26, Division M.
 

 [4]
 

 . Under the City-Parish's Plan of Government, Section 6.02 of Chapter 6 provides:
 

 The Metropolitan Council shall have, except as provided in this Plan of Government, all the powers and duties relating to the organization and activities of a Police Department conferred or imposed on the City of Baton Rouge by its charter and the general laws of the state. The Chief of Police shall be in direct command of the department. ... He shall make rules and regulations consistent with this Plan of Government, the ordinances of the Council, and the laws of the state, concerning the operation of the Police Department, the conduct of its officers and employees, and their equipment, training and discipline, and the penalties to be imposed for infraction of such rules and regulations, which when approved by the Council shall be binding on all members of the department.
 

 [5]
 

 . Capital City Press's petition was filed in the Nineteenth Judicial District Court and was assigned suit number 544,900, Sec. 8.
 

 [6]
 

 . When the suits were filed, the BRPD had not disclosed any of the requested documents.
 

 [7]
 

 . An order was signed granting the motions and transferring suit number 544,900 to Division M.
 

 [8]
 

 . Each letter addressed the particular facts of the separate incidents investigated by the I AD.
 

 [9]
 

 . In
 
 Garrity v. New Jersey,
 
 385 U.S. 493, 497-98, 87 S.Ct. 616, 618-19, 17 L.Ed.2d 562 (1967), police officers under investigation were told that if they declined to answer potentially incriminating questions they would be removed from office, but that any answers they did give could be used against them in a criminal prosecution. The Supreme Court held that statements given under such circumstances were made involuntarily and could not be used to convict the officers of a crime.
 

 [10]
 

 . The form in question is signed by the officer and the IAD investigator and provides, as follows:
 

 I wish to advise you that you are now being questioned as a part of an official investigation by the Baton Rouge Police Internal Affairs Division. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are required by [BRPD] General Order number 112, section VII(B)(1), (2) & (3) to answer all questions truthfully.
 

 You are being investigated in reference to an initial complaint of _which is in violation of the Departmental Disciplinary Code and Offense Article# :_
 

 You are entitled to all rights and privileges guaranteed by the laws and the Constitution of the State of Louisiana and the Constitution of the United States, including the right of not being compelled to incriminate yourself. I further wish to advise you that you are being given a
 
 DIRECT ORDER
 
 to answer all questions relating to the performance of your official duties or fitness for duty, as per the Garrity Rule. If you refuse to answer those questions relating to the performance of your official duties or fitness for duty, you may be subject to Departmental actions which could result in your dismissal from the Police Department.
 

 No information, statements or any evidence which is gained by reason of such statements can be used against you in subsequent criminal proceedings, however those statements and evidence may be used against you in subsequent, non-criminal/administrative Departmental action.
 

 [11]
 

 . Because an officer can view the initial complaint made against him in an IAD investigation, the officer knows who has made the complaint and the content of the complaint. However, the remainder of the IAD file, including witness statements, is not made available to the officer.
 

 [12]
 

 . Sergeant Kelly testified he transferred out of the Media Relations Division in February 1990, and then transferred back in May 1991, so he could not address that particular time period.
 

 [13]
 

 . On the City-Parish’s motion, the trial court placed the IAD records under seal.
 

 [14]
 

 . Louisiana Revised Statutes 44:1 A(l) states:
 

 As used in this Chapter, the phrase “public body” means any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, or any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function.
 

 [15]
 

 .Louisiana Revised Statutes 44:1 A(2)(a) provides:
 

 All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed
 
 *817
 
 by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records”, except as otherwise provided in this Chapter or the Constitution of Louisiana.
 

 [16]
 

 . Secondarily, to support non-disclosure, the BRPD, the Metropolitan Council, and the In-tervenors rely on the exemption set forth for police departments in La. R.S. 44:3 A(3) as to:
 

 Records containing security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof....
 

 
 *818
 
 After reviewing the IAD records at issue, we conclude they do not fall within these enumerated classifications.
 

 [17]
 

 . BRPD General Order No. 112, Section 3:8, addressing confidentiality of the BRPD's business, provides:
 

 All departmental business is to be considered confidential and no member shall release any information to anyone without
 
 *820
 
 proper authorization. No member shall make known to anyone a proposed action of the department nor [sic] the details of any police action.
 

 [18]
 

 . The
 
 Doe
 
 court addressed the tension between the two law enforcement interests,
 
 i.e.,
 
 the police department’s internal affairs office operating as a prophylactic body to deter police misconduct as opposed to the reactive grand jury seeking out and prosecuting misconduct. Upon balancing the importance of the effective and efficient operation of the city’s internal affairs office and the relative ease with which the grand jury might avoid hampering with that effectiveness and efficiency by subpoenaing witnesses directly, the court quashed the subpoena
 
 duces tecum. U.S. v.Doe,
 
 434 F.Supp.2d at 380-83.
 

 [19]
 

 . Although police officers may have a legitimate privacy interest in certain narrowly circumscribed portions of files concerning their off-duty, private conduct, they do not enjoy a reasonable expectation of privacy with respect to records concerning only how they discharge their official duties. Steven D. Zansberg & Pamela Campos,
 
 Sunshine on the Thin Blue Line: Public Access to Police Internal Affairs Files,
 
 22 Comm. Law. 34 (Fall 2004);
 
 also see Cowles Pub. Co. v. State Patrol,
 
 109 Wash.2d 712, 748 P.2d 597, 14 Media L. Rep. 2177 (1988), wherein the court found no personal privacy interest in a law enforcement officer’s actions while performing his public duties, but found that the names of the police officers were properly withheld under a statutory exemption, Revised Code of Washington 42.17.310(1 )(d), which expressly exempted from public inspection and copying, and provided in pertinent part:
 

 [S]pecific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.
 

 In 2005, effective July 1, 2006, the statutory exemption was recodified in the Revised Code of Washington 42.56.240(1).
 

 [20]
 

 . Louisiana Revised Statutes 44:3 A states, in pertinent part:
 

 Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the ... police departments which records are:
 

 (1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled ....
 

 (4)(a) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until a final judgment of conviction or the acceptance of
 

 a plea of guilty by a court of competent jurisdiction....
 

 The determination of whether a specific record is a record of “pending criminal litigation” must be made on a case-by-case basis and is subject to judicial review.
 
 Cormier v. Public Records Request of DiGuilio,
 
 553 So.2d 806, 807 (La. 1989).
 

 [21]
 

 . Louisiana Revised Statutes 44:35(D) provides:
 

 If a person seeking the right to inspect or to receive a copy of a public record prevails in such suit, he shall be awarded reasonable attorney’s fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him rea
 
 *823
 
 sonable attorney's fees or an appropriate portion thereof.